PEOPLE v JOHNSON

1. GRAND JURY—WITNESSES—CONTEMPT—DUE PROCESS—RIGHT TO
   COUNSEL—CONSTITUTIONAL LAW—STATUTES.

   Grand jury witnesses sentenced under the contempt statute have
   a due process right to counsel at the contempt proceeding
   (Const 1963, art 1, § 17, MCLA 767.19c; MSA 28.959[3]).

2. CONSTITUTIONAL LAW—DUE PROCESS—ANALYSIS OF PROCESS—EX-
   AMINATION OF PROCEEDING—INTERESTS AFFECTED.

   The Michigan Constitution embodies a guarantee of due process
   of law; an analysis of what process is due in a particular
   proceeding must begin with an examination of the nature of
   the proceeding and the interests which may be affected by it
   (Const 1963, art 1, § 17).

3. GRAND JURY—WITNESSES—CONTEMPT—DUE PROCESS—RIGHT TO
   COUNSEL—FUNDAMENTAL FAIRNESS.

   A grand jury contempt proceeding requires a due process right to
   counsel in the interest of fundamental fairness because (1) the
   action is pursued by the state at public expense, (2) the conse-
   quences to the defendant are significant, and (3) complex legal
   and procedural issues may arise.

4. CONTEMPT—WITNESSES—DUE PROCESS—RIGHT TO COUNSEL—CRIMI-
   NAL CONTEMPT—CIVIL CONTEMPT.

   The due process right to counsel in contempt cases is not deter-
   mined by the label "civil" or "criminal"; these terms are not
   used in the contempt statute and the only factor considered in
   whether a contempt is "civil" or "criminal" is whether the
   witness can purge himself of the contempt; therefore, even
   though a contempt may be "civil", it still may be subject to a
   due process right to counsel.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 16 Am Jur 2d, Constitutional Law § 573.
    17 Am Jur 2d, Contempt §§ 78, 92, 97.
[2] 16 Am Jur 2d, Constitutional Law §§ 548, 549.
[3, 5] 16 Am Jur 2d, Constitutional Law § 572.
[5] 16 Am Jur 2d, Constitutional Law § 574.

5. GRAND JURY—CONTEMPT—CONFRONTATION—RIGHT TO COUNSEL—
   CONSTITUTIONAL LAW.

   A grand jury contempt proceeding involves a confrontation be-
   tween the state and the defendant and the Michigan Constitu-
   tion affords a due process right to counsel at such a proceeding.

Appeal from Wayne, John D. O'Hair, J. Submit-
ted May 3, 1977, at Detroit. (Docket No. 26153.)
Decided August 22, 1977. Leave to appeal applied
for.

David C. Johnson was convicted of contempt of
court for refusal to be sworn in or to acknowledge
any questions when called before a Wayne County
Citizens' Grand Jury pursuant to a writ of habeas
corpus ad testificandum. Defendant appeals. Re-
versed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Re-
search, Training and Appeals, and *Robert Edick,*
Assistant Prosecuting Attorney, for the people.

*Neil A. McQuarrie,* for defendant.

Before: T. M. BURNS, P. J., and BRONSON and
C. W. SIMON, JR.* JJ.

BRONSON, J. On August 13, 1975, the appellant,
David C. Johnson, while a prisoner in the state
prison at Jackson, Michigan, was called before the
Wayne County Citizens' Grand Jury pursuant to a
writ of habeas corpus ad testificandum. Appellant
refused to be sworn in or acknowledge any ques-
tions. Later that same day, appellant appeared
before the Wayne County Circuit Court. Appellant
was not represented by counsel during this pro-
ceeding. A Wayne County assistant prosecuting

---

* Circuit judge, sitting on the Court of Appeals by assignment.

attorney was sworn as a witness and testified about the appellant's conduct before the grand jury. Appellant declined to question the prosecutor about his account of what happened at the grand jury hearing. Appellant responded to questions from the trial judge by nodding his head, which the trial judge took as indicating a negative answer.

The lower court then sentenced appellant to the Wayne County Jail for one year or until the grand jury term expired, whichever was shorter. Additionally, appellant was fined $10,000. Appellant was also informed that he could reappear at any time to purge himself of the sentence. MCLA 767.19c; MSA 28.959(3).

Appellant appeals as of right.

We believe that grand jury witnesses sentenced under MCLA 767.19c; MSA 28.959(3) have a due process right to counsel at the contempt proceeding under the Michigan Constitution of 1963, art 1, § 17. This comports with the result in Federal courts which have considered this issue. See *In re Di Bella*, 518 F2d 955 (CA 2, 1975), *In re Kilgo*, 484 F2d 1215 (CA 4, 1973), *United States v Sun Kung Kang*, 468 F2d 1368 (CA 9, 1972).[1]

This result also follows from *Artibee v Cheboygan Circuit Judge*, 397 Mich 54; 243 NW2d 248 (1976).

---

[1] These cases extended a right to counsel to grand jury witnesses at contempt hearings for refusal to testify. They were based on *Argersinger v Hamlin*, 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972), which extended a Sixth Amendment right to counsel to defendants in all trials in which the defendant is imprisoned. The Michigan Supreme Court, in *Sword v Sword*, 399 Mich 367; 249 NW2d 88 (1976), held that *Argersinger* was inapplicable to a "civil" contempt proceeding because the contempt proceeding was not a "criminal prosecution" subject to the Sixth Amendment. Despite the rejection of the *Argersinger* rationale in *Sword,* the above cited Federal cases are noteworthy for their acceptance of the fact that a grand jury witness should have the assistance of counsel at a "civil" contempt hearing.

*Artibee* held that an indigent defendant had a due process right to counsel in a paternity action under MCLA 722.711 *et seq.;* MSA 25.491 *et seq.* In *Artibee,* the Michigan Supreme Court stated:

"Const 1963, art 1, § 17, embodies this state's guarantee of due process of law. An analysis of what process is due in a particular proceeding must begin with an examination of the nature of the proceeding and the interests which may be affected by it."

After stating this general standard of due process, the Court examined the paternity action in depth. The Court focused on three factors in determining that:

"The interests of the individuals affected are substantial, and the nature of the proceedings is sufficiently complex so as to require counsel to insure a fair trial." 397 Mich 54, 57; 243 NW2d 248, 249 (1976).

First, the Court stressed the fact that the action is generally prosecuted by attorneys for the county, and that there is a monetary incentive to prosecute. This means that the defendant must often contest a claim prosecuted by the county, at public expense. Given the fact that the complainant generally is afforded the benefit of counsel, the Court found that fundamental fairness required that the defendant be afforded the same right "when faced with the power of the state arrayed against him".

Second, the Court noted the possible consequences to the defendant in a paternity action. In particular, it found that in a paternity action, the defendant could be arrested, jailed if he was unable to make bond, subjected to a substantial

financial obligation, and jailed for not fulfilling that financial obligation.

Third, the Court examined the complexity of the proceedings. Factual issues may be sharply disputed in a paternity action, an ordinary defendant would be unaware of legal and procedural issues which may arise, and the atmosphere of the action is judicial rather than informal.

Thus, *Artibee* held that there was a due process right to counsel in paternity actions because: (1) the action was generally prosecuted by public attorneys at public expense, (2) the defendant faced significant penalties, including a substantial financial commitment as well as possible imprisonment, and (3) the proceeding involves complex factual, legal and procedural issues such that the ordinary defendant may be unaware of his rights and may be at a real disadvantage when the complainant has the benefit of counsel.

Applying this analytical approach to the grand jury contempt proceeding under MCLA 767.19c; MSA 28.959(3), we find that the same three factors mandate a due process right to counsel.

First, the contempt proceeding is an action in which the power of the state is brought to bear against the defendant. Although, strictly speaking, the action is not "prosecuted" by the state, it is the judicial branch of the state which hales the witness into court and then examines him relative to the alleged contempt. See generally, GCR 1963, 760.1. As in *Artibee,* the resources of the state are arrayed against the defendant.

Secondly, it is undeniable that a recalcitrant grand jury witness faces a substantial penalty. MCLA 767.19c; MSA 28.959(3) provides a maximum penalty of one year imprisonment and a

$10,000 fine, which may be commuted if the witness purges himself of the contempt.

Third, although the grand jury contempt hearing may not involve complex factual issues, it does involve complex legal and procedural issues. For example, an uncounseled defendant will not be prepared to argue that his silence is protected by the Fifth Amendment. A question of successive punishments for refusal to testify before different grand juries may arise. Also, an uncounseled defendant is unlikely to be prepared to question a sentence in excess of the statutory maximum. See MCLA 767.19c; MSA 28.959(3).

Thus, in a statutory grand jury contempt proceeding, (1) the action is pursued by the state at public expense, (2) the consequences to the defendant are quite significant, and (3) complex legal and procedural issues may arise. We find that the nature of the statutory contempt proceeding, under the *Artibee* analysis, requires a due process right to counsel in the interest of fundamental fairness.

As is evident from the analysis above, a simple labeling of a contempt proceeding as "civil" or "criminal" is not determinative of the due process right to counsel question. Typically, the only factor considered in whether contempt is "civil" or "criminal" is whether the witness can purge himself of the contempt. *Spalter v Wayne Circuit Judge,* 35 Mich App 156, 165, fn 9; 192 NW2d 347 (1971). This is not the detailed analysis mandated by *Artibee;* thus, the label "civil" or "criminal" is not dispositive of the right to counsel issue. In fact, MCLA 767.19c; MSA 28.959(3) itself nowhere uses the terms "civil" or "criminal" contempt.

We hold that even though a contempt may be "civil", it still may be subject to a due process

right to counsel under *Artibee* if the proceeding is sufficiently similar to the one found to require counsel in *Artibee.*

*Sword v Sword,* 399 Mich 367; 249 NW2d 88 (1976), is consistent with *Artibee* and does not limit the due process right to counsel in the instant case. In *Sword,* the Court held that there was no general due process right to counsel in proceedings for failure to pay child support,[2] but only after closely analyzing the nature of the proceeding. In fact, the Court appears to have used the same three-part analysis in *Sword* as it used in · *Artibee.*

First, the *Sword* Court found that the child support contempt proceeding was generally *not* prosecuted by an attorney for the state, but by the Friend of the Court.

Second, while a jail sentence for contempt is possible, such a sentence would be proper only if the defendant had a present ability to pay. See *Sword v Sword, supra,* at 387–388.

Third, the Court noted that the non-support contempt proceeding is not complex at all, involving only the fact of non-payment and the ability to pay. The proceeding itself is informal and does not involve complex legal or procedural issues.

The most important aspect of the non-support proceeding considered by the Court in *Sword* was the incredible potential cost and delay which would result from requiring counsel in all cases. The Court expressly stated that the burden of more than doubling the number of appointed counsel was apparent.[3]

---

[2] *See* MCLA 552.201–552.203; MSA 25.161–25.163.

[3] For example, in 1973 there were approximately 25,000 such hearings as compared to about 20,000 criminal cases disposed of in Wayne County Circuit Court. *See Sword v Sword, supra,* at 382–383.

In the instant case, the burden in terms of cost and delay would be minimal. While there apparently are no figures available on the number of grand jury contempt proceedings initiated yearly, we may safely assume that the number is miniscule compared to the number of cases in which counsel are already appointed. This factor alone distinguishes the instant case from *Sword.*

There are other indications that the instant case is distinguishable from *Sword.* Justice LEVIN, concurring, stated that assistance of counsel may be required where there is a "confrontation" between the state and the defendant:

> "If the proceedings are brought by the state, its initiative and monetary interest in the proceedings are factors to be considered in deciding whether assistance should be provided to the defendant. *Artibee v Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976). 'That this is a confrontation between the state and an individual is "a circumstance of great importance in determining a standard of fairness." ' *Reist v Bay Circuit Judge,* 396 Mich 326, 345; 241 NW2d 55, 63 (1976)." 399 Mich, at 397–398.

*Sword* did not involve a "confrontation". However, it is undeniable that a grand jury contempt proceeding involves a confrontation between the state and the defendant.

The Michigan Constitution affords a due process right to counsel in a grand jury contempt proceeding under MCLA 767.19c; MSA 28.959(3). The detailed factual analysis mandated by *Artibee* requires a right to counsel in the interest of fundamental fairness; *Sword* is distinguishable because the proceedings there were of an informal nature not requiring counsel. More importantly, the cost

and delay of requiring counsel in non-support proceedings was prohibitive.

The instant case must be reversed. Defendant is entitled to a new contempt hearing. If he demonstrates indigency,[4] he is entitled to appointed counsel at the hearing.

Reversed.

---

[4] The record in the instant case is silent as to whether appellant is indigent.