PEOPLE v DAVID JOHNSON

Docket No. 60337. Argued October 6, 1978 (Calendar No. 17).—Decided October 2, 1979.

David C. Johnson was convicted in Wayne Circuit Court, John D. O'Hair, J., of contempt of court for refusal to be sworn or to answer any questions when called before a grand jury to testify. The Court of Appeals, T. M. Burns, P.J., and Bronson and Simon, JJ., reversed on the ground that the defendant had a right to the assistance of counsel in the contempt proceeding (Docket No. 26153). The people appeal. *Held:*

1. A witness summoned to appear before a grand jury, whose testimony or failure to testify is such that contempt proceedings are initiated, requires the assistance of counsel because of the nature and purpose of the grand jury and contempt proceedings. Counsel could advise him regarding the efforts of the state to compel his testimony and how he could purge himself of the alleged contempt without waiving his Fifth Amendment privilege or involving himself in criminal proceedings, and also defend him in the contempt proceedings against the state's efforts to incarcerate him for failing to testify and, if he indicates a desire to purge himself of the alleged contempt, counsel him in further proceedings before the grand jury.

2. Fundamental fairness requires that, if indigent, a witness be provided counsel at state expense since the state is the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6-9, 11, 14-16] 17 Am Jur 2d, Contempt §§ 30, 32, 92.
  38 Am Jur 2d, Grand Jury §§ 37, 38.
  Right to counsel in contempt proceedings. 52 ALR3d 1002.
  Grand jury witness' right to hearing before summary commitment for contempt under Recalcitrant Witness Statute (28 USCS § 1826(a)). 37 ALR Fed 875.
[2, 3, 6-8] 17 Am Jur 2d, Contempt § 92.
  20 Am Jur 2d, Courts § 79.
[4] 17 Am Jur 2d, Contempt §§ 2-10.
[5] 70 Am Jur 2d, Courts § 79.
[6-9, 14, 15] 17 Am Jur 2d, Contempt §§ 4, 5.
[9, 12-16] 16 Am Jur 2d, Constitutional Law § 573.
[10] 16 Am Jur 2d, Constitutional Law §§ 542-584.

moving party in such contempt proceedings, since the state seeks to compel the witness's testimony, since waiver of Fifth Amendment privilege is involved, since by his testimony the witness may involve himself in the crimes being investigated and since the witness might avoid being held in contempt if counseled regarding his failure to testify and the manner in which he can purge the alleged contempt consistent with exercise of the Fifth Amendment privilege.

3. A number of courts have held that an indigent witness cited for civil contempt of a grand jury is entitled to counsel at state expense; no contrary authority has been found. Cases involving civil contempt for failure to obey orders in private litigation where the state is not involved (typically involving non-payment of alimony or child support), are readily distinguishable. Here there are the added factors of the state being the moving party, the state's purpose to compel testimony in a criminal investigation, and the witness's assertion of Fifth Amendment privilege.

4. While the *factual* issues in a contempt proceeding for failing to testify may be simpler than in a paternity action, for example, and, indeed, often there is no factual dispute, there may be difficult *legal* questions. A witness may be confused and probably is uninformed regarding the subtleties of Fifth Amendment analysis and cannot be expected to know how to exercise his privilege in a manner which will avoid contempt proceedings nor how to defend himself against the state's efforts to compel his testimony or incarcerate him for failure to, or until he does, testify.

5. Johnson, who was brought from Jackson prison to testify, had indicated to the prosecutor that he did not understand why he was there, that he did not wish to take the oath and desired to assert his Fifth Amendment privilege. He apparently thought that the Fifth Amendment protected him from taking the oath. He may have thought that if he took the oath or said anything he was waiving his Fifth Amendment privilege, and may have been so advised by a jailhouse lawyer before he left the prison for Wayne County. There is "reasonable likelihood" that the nature of the matter is of such complexity that without the assistance of counsel Johnson was unlikely to be capable of understanding the nature of the proceedings, articulating his position or appreciating the options available to him. Whenever a witness indicates that he wishes to exercise his Fifth Amendment privilege as did this defendant, the issues are sufficiently complex to require the assistance of counsel and the appointment of counsel, pursuant to the Due Process Clause,

for an indigent witness in contempt proceedings which may result in incarceration.

6. If a lawyer whose function was to represent him and not the state had been appointed for Johnson, the lawyer could have informed Johnson that he could exercise his Fifth Amendment privilege after being sworn. Johnson might have had confidence in such a statement by *his* lawyer and might thereby have purged himself of the alleged contempt. Providing counsel to an indigent witness is consistent with the principle that defendants in contempt proceedings should be given every opportunity to exonerate themselves. If a lawyer had been appointed for Johnson and had persuaded him to be sworn, the lawyer would have been available to provide counsel regarding and to defend his exercise of his Fifth Amendment privilege in further proceedings. A lawyer could, additionally, have raised legal defenses.

7. The statement that Johnson is "charged with no crime, faces no conviction" is an assumption which ignores Johnson's assertion of the Fifth Amendment privilege. Johnson may have faced criminal charges. He was called as a witness in an investigation of a homicide. Not infrequently witnesses before grand juries implicate themselves in the crimes being investigated. A grand jury investigation is, in a sense, more akin to a criminal prosecution than is a paternity action. It is an inquisition conducted by the state in which the witness generally sits alone without counsel at his side; counsel, whether retained or appointed, generally must remain outside the grand jury room. A result of the inquiry may be indictment of the witness. The purpose of civil contempt proceedings is to coerce testimony, to force the witness back into the grand jury room, to compel him to testify, to provide testimony which, indeed, may implicate him in the crime under investigation.

The judgment of the Court of Appeals is affirmed.

Justice Ryan, joined by Chief Justice Coleman, dissented:

1. Courts have inherent power to enforce compliance with their lawful orders through contempt proceedings. They must also be able to compel the appearance and testimony of witnesses in judicial proceedings. In this case the circuit court imprisoned the defendant to compel him to testify before the grand jury. The sentence was clearly intended to operate in a prospective manner in order to coerce and not to punish the defendant. The judge explained to the defendant that he could purge himself of the contempt by testifying before the grand jury as to any matter which would not be self-incriminating.

The defendant carried the keys of his prison in his own pocket. Because by its very character and purpose such an adjudication and sentence is coercive and remedial, rather than punitive, it is deemed civil in nature.

2. Because the Sixth Amendment right to the assistance of counsel is confined to criminal proceedings, where the contempt proceeding is civil in nature, a defendant's right to counsel, if any, must be predicated upon due process guarantees. The defendant's due process rights include the assistance of counsel if fundamental fairness in the due process sense requires such assistance.

3. An analysis of what process is due in a particular proceeding must begin with an examination of the nature of the proceeding and the interests which may be affected by it. A civil contempt proceeding for failure to testify before a grand jury, while carrying potentially severe consequences, involves virtually none of the procedural and substantive complexities of a paternity trial, for example. It is a proceeding of a summary character with a purely remedial purpose, and generally involves a single, simple issue of whether the witness will answer the question or, upon refusal to answer, be imprisoned for the refusal. Typically, the proceeding is brief and simple to understand, and does not involve the complexities of fact-finding, jury persuasion, or resolution of sophisticated legal issues. While it is true that the defendant faced the serious prospect of immediate imprisonment for up to one year and a fine not to exceed $10,000, those dire consequences *alone* do not create a due process right to counsel. It is the potential complexity of the proceedings which may result in imposition of the serious penalties, and not the penalties themselves, which implicate the guarantee of assistance of counsel of the Due Process Clause.

4. Due process does not require counsel in every instance in which the possibility of imprisonment exists, but depends upon circumstances showing that in view of the nature of the proceedings the defendant would probably suffer unfair treatment if counsel were not provided. The Supreme Court of the United States focused upon the fact of imprisonment for six months in declaring the existence of a Federal constitutional right to counsel in a misdemeanor prosecution, but did so only in cases of criminal prosecution. Defendant Johnson is charged with no crime, faces no conviction, and cannot be made to suffer an involuntary penalty. By obeying the court's order to appear and give testimony before the grand jury, the defendant can purge

himself of the adjudication of contempt and cause his sentence to be commuted.

5. The better standard for determining whether there is a due process right to counsel in a civil contempt proceeding of any kind is that, if there exists a reasonable likelihood that the civil contempt proceedings by their very nature involve matters of such factual, procedural, or substantive complexity that it must be concluded that without the assistance of counsel the defendant is unlikely to be capable of understanding the nature of the proceedings, articulating his position or appreciating the options available to him, or any one of them, then it must be said that the process due him includes the assistance of counsel. All civil contempt proceedings for all defendants do not present such a situation. The need for assistance of counsel as a due process requirement must be determined on a case-by-case basis.

6. Although exceptional cases may arise in which due process will require the appointment of counsel in contempt proceedings for refusal to testify before a grand jury, this case is not one of them. The defendant, in the grand jury chambers, before being asked any questions at all, refused to be sworn. After the prosecuting attorney advised him of his right to remain silent when questioned, of the fact that anything he said could be used against him and that he had a right to the assistance of counsel and if indigent, appointed counsel, he was asked if he understood. He refused to answer. When asked if he wanted an attorney he again refused to respond. In view of the defendant's obvious willful refusal to cooperate with the grand jury and the court, even to the point of refusing to indicate before the grand jury whether he understood what was being said to him, or whether he wished the assistance of counsel during the intended interrogation by the grand jury, and merely nodding his head in the negative when asked by the circuit court whether he had anything he wished to say, it cannot be reasonably concluded that he was treated unfairly or that the nature of the proceedings, either procedural or substantive, was such that without the assistance of counsel fair treatment was not possible.

77 Mich App 426; 258 NW2d 504 (1977) affirmed.

### Opinion of the Court

1. Grand Jury — Witnesses — Failure to Testify — Contempt — Assistance of Counsel.

A witness summoned to appear before a grand jury, whose testimony or failure to testify is such that contempt proceed-

ings are initiated, requires the assistance of counsel because of the nature and purpose of the grand jury and contempt proceedings (MCL 767.19c; MSA 28.959[3]).

2. GRAND JURY — WITNESSES — INDIGENCY — CONTEMPT — ASSISTANCE OF COUNSEL — DUE PROCESS.

Fundamental fairness requires that, if indigent, a witness summoned to appear before a grand jury, whose testimony or failure to testify is such that contempt proceedings are initiated, be provided with counsel at state expense since the state is the moving party in such contempt proceedings, since the state seeks to compel the witness's testimony, since waiver of Fifth Amendment privilege is involved, since by his testimony the witness may involve himself in the crimes being investigated and since the witness might avoid being held in contempt if counseled regarding his failure to testify and the manner in which he can purge the alleged contempt consistent with exercise of the Fifth Amendment privilege (US Const, Ams V, XIV; Const 1963, art 1, § 17; MCL 767.19c; MSA 28.959[3]).

3. GRAND JURY — WITNESSES — ASSISTANCE OF COUNSEL — FIFTH AMENDMENT — DUE PROCESS.

Whenever a witness before a grand jury indicates that he wishes to exercise his Fifth Amendment privilege the issues are sufficiently complex to require the assistance of counsel and the appointment of counsel, pursuant to the Due Process Clause, for an indigent witness in contempt proceedings which may result in incarceration (US Const, Ams V, XIV; Const 1963, art 1, § 17).

DISSENTING OPINION BY RYAN, J.

4. CONTEMPT — COURTS — INHERENT POWERS.

*Courts have inherent power to enforce compliance with their lawful orders through contempt proceedings.*

5. COURTS — WITNESSES — INHERENT POWERS.

*Courts must be able to compel the appearance and testimony of witnesses in judicial proceedings.*

6. CONTEMPT — GRAND JURY — WITNESSES — FAILURE TO TESTIFY — CIVIL CONTEMPT.

*An adjudication of contempt and sentence of a defendant by a circuit court to compel him to obey an order to testify before a grand jury was civil in nature where the sentence was clearly intended to operate in a prospective manner in order to coerce and not to punish the defendant, and the circuit judge ex-*

plained to the defendant that he could purge himself of the contempt by testifying before the grand jury as to any matter which would not be self-incriminating (MCL 767.19c; MSA 28.959[3]).

7. CONTEMPT — ASSISTANCE OF COUNSEL — CIVIL CONTEMPT — DUE PROCESS.

A defendant's right to counsel, if any, in a contempt proceeding which is civil by nature must be predicated upon the Due Process Clause (US Const, Am XIV; Const 1963, art 1, § 17).

8. CONTEMPT — ASSISTANCE OF COUNSEL — CIVIL CONTEMPT — SIXTH AMENDMENT.

The constitutional right to the assistance of counsel guaranteed by the Sixth Amendment of the Constitution of the United States and the Michigan Constitution is confined to criminal proceedings and is inapplicable to a civil contempt proceeding for compelling a summoned witness to testify before a grand jury (US Const, Am VI; Const 1963, art 1, § 20; MCL 767.19c; MSA 28.959[3]).

9. CONTEMPT — CIVIL CONTEMPT — DUE PROCESS.

A defendant's due process rights in a civil contempt proceeding include the assistance of counsel if fundamental fairness in the due process sense requires such assistance (US Const, Am XIV; Const 1963, art 1, § 17).

10. CONSTITUTIONAL LAW — DUE PROCESS.

An analysis of what process is due in a particular proceeding under the state's guarantee of due process of law must begin with an examination of the nature of the proceeding and the interests which may be affected by it (Const 1963, art 1, § 17).

11. CONTEMPT — GRAND JURY — WITNESSES — FAILURE TO TESTIFY — DUE PROCESS.

A civil contempt proceeding for failure to testify before a grand jury, while carrying potentially severe consequences, involves virtually none of the procedural and substantive complexities of a paternity trial, for example; it is a proceeding of a summary character with a purely remedial purpose, and generally involves a single, simple issue of whether the witness will answer the question put to him by the grand jury or, upon refusal to answer, be imprisoned for the refusal (US Const, Am XIV; Const 1963, art 1, § 17; MCL 767.19c; MSA 28.959[3]).

12. CONSTITUTIONAL LAW — ASSISTANCE OF COUNSEL — DUE PROCESS.

It is the potential complexity of the proceedings which may result

*in imposition of serious penalties, and not the penalties themselves, which implicate the assistance of counsel guarantee of the Due Process Clause (US Const, Am XIV; Const 1963, art 1, § 17).*

13. CONSTITUTIONAL LAW — ASSISTANCE OF COUNSEL — DUE PROCESS.

*Due process does not require the assistance of counsel in every instance in which the possibility of imprisonment exists, but depends upon circumstances showing that in view of the nature of the proceedings the defendant would probably suffer unfair treatment if counsel were not provided (US Const, Am XIV; Const 1963, art 1, § 17).*

14. CONTEMPT — ASSISTANCE OF COUNSEL — CIVIL CONTEMPT — DUE PROCESS.

*The process due a defendant charged with civil contempt must be said to include the assistance of counsel where there exists a reasonable likelihood that the civil contempt proceedings by their very nature involve matters of such factual, procedural, or substantive complexity that it must be concluded that without the assistance of counsel the defendant is unlikely to be capable of understanding the nature of the proceedings, articulating his position, or appreciating the options available to him, or any one of them (US Const, Am XIV; Const 1963, art 1, § 17).*

15. CONTEMPT — ASSISTANCE OF COUNSEL — CIVIL CONTEMPT — DUE PROCESS.

*The need for assistance of counsel as a due process requirement in a civil contempt proceeding must be determined on a case-by-case basis (US Const, Am XIV; Const 1963, art 1, § 17).*

16. CONTEMPT — GRAND JURY — WITNESSES — FAILURE TO TESTIFY — ASSISTANCE OF COUNSEL — DUE PROCESS.

*It cannot be reasonably concluded that a defendant charged in circuit court with civil contempt for failure to testify before a grand jury was treated unfairly or that the nature of the contempt proceedings, either procedural or substantive, was such that without the assistance of counsel fair treatment was not possible where the defendant obviously and willfully refused to cooperate with the grand jury and the circuit court, even to the point of refusing to be sworn, or to indicate before the grand jury whether he understood what was being said to him, or whether he wished the assistance of counsel during the intended interrogation by the grand jury, and the defendant merely nodded his head in the negative when asked by the circuit court whether he had anything he wished to say (US*

*Const, Am XIV; Const 1963, art 1, § 17; MCL 767.19c; MSA 28.959[3]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

LEVIN, J. The issue is whether an indigent person may be found in civil contempt and incarcerated for failure to testify before a grand jury unless offered counsel at state expense at the contempt proceedings.[1]

David C. Johnson, following his refusal to be sworn or to answer any questions before a citizens' grand jury, was fined $10,000 and sentenced to one year in jail. He would be released upon purging himself of the contempt or expiration of the grand jury term.

The Court of Appeals reversed and held that an indigent witness has a right under the Due Process Clause of the Michigan Constitution[2] to assigned counsel at contempt proceedings in respect to a citizens' grand jury.[3] We affirm.

---

[1] The order granting leave to appeal states the issue as: "Whether a defendant has a right to counsel in a civil contempt proceeding under MCL 767.5; MSA 28.945 and MCL 767.19c; MSA 28.959(3)."

The circuit judge found that Johnson violated MCL 767.19c; MSA 28.959(3). The Court of Appeals considered only that section. The prosecutor states in his brief on appeal to this Court that MCL 767.5; MSA 28.945 is the applicable statute.

MCL 767.5; MSA 28.945 applies to the one man grand jury, see *Spalter v Wayne Circuit Judge,* 35 Mich App 156, 164, fn 8; 192 NW2d 347 (1971), and provides for a maximum fine of $1,000. Johnson was called before a citizens' grand jury and fined $10,000, the maximum fine under MCL 767.19c; MSA 28.959(3). MCL 767.19c; MSA 28.959(3) is the pertinent statute.

[2] Const 1963, art 1, § 17.

[3] *People v Johnson,* 77 Mich App 426, 433; 258 NW2d 504 (1977).

A witness summoned to appear before a grand jury, whose testimony or failure to testify is such that contempt proceedings are initiated, requires the assistance of counsel because of the nature and purpose of the grand jury and contempt proceedings. Counsel could advise him regarding the efforts of the state to compel his testimony and how he could purge himself of the alleged contempt without waiving his Fifth Amendment privilege or involving himself in criminal proceedings, and also defend him in the contempt proceedings against the state's efforts to incarcerate him for failing to testify and, if he indicates a desire to purge himself of the alleged contempt, counsel him in further proceedings before the grand jury.

Fundamental fairness requires that, if indigent, a witness be provided with counsel at state expense since the state is the moving party in such contempt proceedings, since the state seeks to compel the witness's testimony, since waiver of Fifth Amendment privilege is involved, since by his testimony the witness may involve himself in the crimes being investigated and since the witness might avoid being held in contempt if counseled regarding his failure to testify and the manner in which he can purge the alleged contempt consistent with exercise of the Fifth Amendment privilege.

A number of courts have held that an indigent witness cited for civil contempt of a grand jury is entitled to counsel at state expense; we find no contrary authority.

Cases involving civil contempt for failure to obey orders in private litigation, where the state is not involved (typically involving non-payment of alimony or child support), are readily distinguishable.

I

Johnson, while an inmate in the state penitentiary at Jackson, was subpoenaed to testify before a citizens' grand jury.

When called as a witness and asked to take the oath, he responded, "I'm taking the Fifth Amendment. I don't want no oath." "I don't know why I'm here." The assistant prosecutor explained to him that the "oath involves your swearing to tell the truth. Then you may assert your Fifth Amendment rights, and I will give you your rights after the oath has been administered." Johnson said, "I won't take no oath." He did not respond to any other questions.

The assistant prosecutor then advised Johnson that he had "the right to remain silent", to have an attorney outside the grand jury room with whom he could confer and that "[a]nything that you say can and will be used against you" and that at any time he could "exercise these rights and not answer any questions or make any statements". Johnson was asked whether he wished to have an attorney and was advised that if he could not afford an attorney he could "petition the presiding judge of the circuit court for Wayne County and ask for the appointment of an attorney".

Johnson made no response to inquiries whether he understood his rights, wished an attorney and understood that he could petition the presiding judge for the appointment of an attorney.

Johnson was then taken before a circuit judge who inquired whether he had been duly served with a subpoena. Johnson responded, "I don't know. I don't know what this is."

The assistant prosecutor testified that the grand jury was engaged in the investigation of a homi-

cide, that Johnson had been removed from Jackson prison and brought before the grand jury on a writ of *habeas corpus.* Johnson had refused to be sworn. The assistant prosecutor had attempted to advise him of his constitutional rights "as well as his statutory rights concerning his right to counsel".[4] Johnson had not answered any questions.

The judge asked Johnson whether he wished to question the assistant prosecutor or say anything. He shook his head indicating a negative answer. The judge did not advise Johnson of the nature of the contempt proceedings, inquire whether he wished an opportunity to obtain counsel, whether he was indigent or desired that counsel be appointed for him.[5]

---

[4] The citizens' grand jury statute provides the right to have counsel present at his side at all times to a witness who has been granted immunity while he is being questioned about matters within the grant of immunity. MCL 767.19e; MSA 28.959(5).

The one-man grand jury statute provides that a witness "shall at all times be entitled to legal counsel". MCL 767.3; MSA 28.943.

We find no other pertinent statute.

[5] Johnson was not offered counsel by the assistant prosecutor. He was told, rather, that if he could not afford an attorney he could *petition* the court and ask for appointment. Johnson might not have understood how one petitions a court. If a formal petition was required, it was probably beyond his ability to prepare. He was not assured that counsel would be appointed if he were indigent and did petition.

Another witness, not as cautious or, perhaps, as fearful as this witness, might have responded, "Yes, I would like an attorney. Yes, I would like to make such a petition. How do I petition? Will the questioning stop if I tell you I want a lawyer?" This witness did not, perhaps out of ignorance, misinformation, bad advice or just plain fear. Perhaps he was just obstinate and, indeed, contumacious in failing to make that response. But he cannot be so characterized and no such determination can be made without inquiry by a judge, not a prosecutor, after the witness has had an opportunity to obtain counsel, of whether he has a basis for asserting the Fifth Amendment privilege. Before any such inquiry by a judge, an indigent witness should be offered counsel.

In all events, the issue here is not whether counsel was properly offered at the grand jury proceedings, but whether Johnson was entitled to counsel at the contempt proceeding. There was no inquiry at the contempt proceeding whether Johnson desired to obtain coun-

The judge then found Johnson guilty of contempt pursuant to MCL 767.19c; MSA 28.959(3),[6] and pronounced the sentence.

## II

This Court, in *Artibee v Cheboygan Circuit Judge*,[7] held that an indigent defendant in a paternity action has a right under this state's Due Process Clause to appointed counsel, and, in *Sword v Sword*,[8] that an indigent defendant need not invariably be provided with appointed counsel in proceedings to enforce a child support order.

Our colleague would distinguish *Artibee* on the ground that the factual and legal issues in a paternity action are likely to be more complex than in civil contempt proceedings. Contempt proceedings ordinarily present a relatively simple factual issue which will be summarily determined without a jury in a proceeding not involving "the complexities of fact-finding, jury persuasion or resolution of sophisticated legal issues" involved in a paternity action.

While the *factual* issues in a contempt proceeding for failing to testify may be simpler than in a paternity action and, indeed, often there is no

---

sel, or if he was indigent and, if so, wished to have counsel appointed for him.

[6] "Any witness who neglects or refuses to appear or testify or both in response to a summons of the grand jury or to answer any questions before the grand jury concerning any matter or thing of which the witness has knowledge concerning matters before the grand jury *after service of a true copy of an order granting the witness immunity as to such matters* shall be guilty of a contempt and after a public hearing in open court and *conviction* of such contempt shall be fined not exceeding $10,000.00 or imprisoned not exceeding 1 year, or both. * * *." MCL 767.19c; MSA 28.959(3) (emphasis supplied).

[7] *Artibee v Cheboygan Circuit Judge*, 397 Mich 54; 243 NW2d 248 (1976).

[8] *Sword v Sword*, 399 Mich 367; 249 NW2d 88 (1976).

factual dispute, there may be difficult *legal* questions. A witness may be confused and probably is uninformed regarding the subtleties of Fifth Amendment analysis and cannot be expected to know how to exercise his privilege in a manner which will avoid contempt proceedings nor how to defend himself against the state's efforts to compel his testimony or incarcerate him for failure to, or until he does, testify.

Johnson had indicated to the prosecutor that he did not understand why he was there, that he did not wish to take the oath and desired to assert his Fifth Amendment privilege. He apparently thought that the Fifth Amendment protected him from taking the oath. He may have thought that if he took the oath or said anything he was waiving his Fifth Amendment privilege.[9] He may have been so advised by a jailhouse lawyer before he left the prison for Wayne County.

Applying the test suggested by our colleague,[10] there is "reasonable likelihood" that the nature of the matter is of such complexity that without the assistance of counsel Johnson was "unlikely to be

[9] Johnson said in so many words that he wished to exercise his Fifth Amendment privilege. To imprison him without inquiry and a determination regarding the merits of his exercise of the privilege, simply because he refused to take the oath and his assertion of the privilege was one or possibly two questions premature, is somewhat formalistic. If his exercise of the privilege was meritorious, and there is no reason on this record to conclude that it was not, then he needed counsel who could show him how to exercise his privilege without waiving it.

[10] "If there exists a reasonable likelihood that the civil contempt proceedings by their very nature involve matters of such factual, procedural or substantive complexity that it must be concluded that without the assistance of counsel the defendant is unlikely to be capable of understanding the nature of the proceedings, articulating his position or appreciating the options available to him, or any one of them, then it must be said that the process due him includes the assistance of counsel."

Our analysis makes it unnecessary to consider whether this is a sound test, and we do not adopt it.

capable of understanding the nature of the proceedings, articulating his position or appreciating the options available to him".

Whenever a witness indicates that he wishes to exercise his Fifth Amendment privilege as did this defendant ("I'm taking the Fifth Amendment"), the issues are sufficiently complex to require the assistance of counsel and the appointment of counsel, pursuant to the Due Process Clause, for an indigent witness in contempt proceedings which may result in incarceration.

## III

If a lawyer whose function was to represent him and not the state had been appointed for Johnson, the lawyer could have informed Johnson that he could exercise his Fifth Amendment privilege after being sworn. Johnson might have had confidence in such a statement by *his* lawyer and might thereby have purged himself of the alleged contempt. Providing counsel to an indigent witness is consistent with this Court's statement: "Defendants in contempt proceedings should be given every opportunity to exonerate themselves."[11]

If a lawyer had been appointed for Johnson and had persuaded him to be sworn, the lawyer would have been available to provide counsel regarding and to defend his exercise of his Fifth Amendment privilege in further proceedings.

A lawyer could, additionally, have raised legal defenses:

—Johnson was punished pursuant to § 19c[12] which provides for potentially greater penalties

---

[11] *In re White,* 327 Mich 316, 317; 41 NW2d 882 (1950).

[12] See fn 6, *supra.*

than the general contempt provisions.[13] It appears that § 19c concerns neglect or refusal to testify after a grant of immunity.[14] Johnson was not granted immunity. A lawyer might have argued successfully that a witness, not granted immunity, who appears before a grand jury is not subject to § 19c punishment merely because he refuses to be sworn, the more severe penalties being applicable only to witnesses who have been granted immunity. Since Johnson could not have been punished so severely for refusing to testify after being sworn, it is beyond the intendment of the statute to so punish him for refusing to be sworn.

—A lawyer might have claimed that summary contempt proceedings were unjustified because the contempt was not in the presence of the court.[15]

---

[13] MCL 600.1701, 600.1715; MSA 27A.1701, 27A.1715.

[14] It appears that is also the prosecutor's reading of the statute. In his brief in support of the application for leave to appeal, he said: "appellant would note that the appropriate section is 767.5, 767.19c dealing with immunized witnesses, and it does not appear that defendant was an immunized witness". See fn 1, *supra.*

[15] Summary contempt proceedings are not permitted unless the contempt is "direct", *i.e.,* in open court. If the contempt is not direct the contemnor must be served with notice of the charges and given an opportunity to prepare a response:

"Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out." *In re Oliver,* 333 US 257, 275-276; 68 S Ct 499; 92 L Ed 682 (1948). See, also, *Cooke v United States,* 267 US 517; 45 S Ct 390; 69 L Ed 767 (1925).

—A lawyer might further have claimed that Johnson's failure to testify was innocent in that he thought he had (the assistant prosecutor told him he had) the right to remain silent. He did only what he was told he could do—he remained silent.

Our colleague says that Johnson is "charged with no crime, faces no conviction". That is an assumption which ignores Johnson's assertion of the Fifth Amendment privilege. Johnson may have faced criminal charges. He was called as a witness in an investigation of a homicide. Not infrequently

---

There is a difference of opinion whether failure to testify before a grand jury is a direct contempt. See, generally, Anno: *Refusal to answer questions before state grand jury as direct contempt of court,* 69 ALR3d 501. See, also, *State v Roll,* 267 Md 714; 298 A2d 867; 69 ALR3d 483 (1973); and compare with *People v Lucero,* 196 Colo 276; 584 P2d 1208 (1978).

See, also, *United States v Hawkins,* 501 F2d 1029 (CA 9, 1974); *Jessup v Clark,* 490 F2d 1068 (CA 3, 1973).

In *People v Johns,* 384 Mich 325, 331, 333; 183 NW2d 216 (1971), this Court held that a criminal contempt conviction for failure to answer questions before a one man grand jury requires "compliance with the procedural safeguards established for the prosecution of any other crime of equal gravity". The Court said:

"However we hold that the time of sentencing was far too late in the criminal process and the context of these proceedings was far too ambiguous to adequately inform the defendant of the nature of the charge against him and afford the defendant that fundamental fairness of process guaranteed by both the Michigan and the United States constitutions."

The Court did not consider the Due Process requirements in civil contempt proceedings for failing to testify before a grand jury. There is, however, an intimation that the contempt would not be considered to have been direct/in open court. See *id.,* p 333, fn 6.

MCL 767.19c; MSA 28.959(3) indicates that a "hearing" is required. Compare MCL 600.1711; MSA 27A.1711, providing procedural protection when the contempt is not committed in the immediate view and presence of the court.

Our disposition does not require that we consider i) whether a failure to testify before a grand jury is a direct contempt, ii) the due process requirements in civil contempt proceedings for failing to testify before a grand jury, or iii) whether Johnson, who was not "advised of the charges against him" before he entered the courtroom, had "a reasonable opportunity to meet them by way of defense or explanation [and to] have the right to be represented by [retained] counsel". *In re Oliver, supra.*

witnesses before grand juries implicate themselves in the crimes being investigated.

A grand jury investigation is, in a sense, more akin to a criminal prosecution than is a paternity action. It is an inquisition conducted by the state in which the witness generally sits alone without counsel at his side. Counsel, whether retained or appointed, generally must remain outside the grand jury room.[16] A result of the inquiry may be indictment of the witness.

The purpose of such civil contempt proceedings is to coerce testimony, to force the witness back into the grand jury room, to compel him to testify, to provide testimony which, indeed, may implicate him in the crime under investigation.

## IV

The United States Courts of Appeals for the Second, Fourth and Ninth Circuits have held or said that there is a right to counsel where there is a possibility of incarceration in civil contempt proceedings for failing to testify before a grand jury.[17] The United States Court of Appeals for the Eighth Circuit so concluded in civil contempt proceedings for failing to comply with a court order requiring production of records for the Internal Revenue Service.[18]

The Colorado Supreme Court and the Maryland Court of Appeals have also held that there is a right to appointed counsel in civil contempt proceedings for failing to testify before a grand jury.[19]

---

[16] But see fn 4, *supra.*

[17] *In re DiBella,* 518 F2d 955 (CA 2, 1975); *In re Kilgo,* 484 F2d 1215 (CA 4, 1973); *United States v Sun Kung Kang,* 468 F2d 1368 (CA 9, 1972).

[18] *United States v Anderson,* 553 F2d 1154; 567 F2d 839 (CA 8, 1977).

[19] *People v Lucero, supra; State v Roll, supra.* In *Roll,* although the

We find no contrary authority in contempt proceedings for failing to testify before a grand jury.

*Sword*[20] is not inconsistent with the disposition we think appropriate. Here there are the added factors of the state being the moving party, the state's purpose to compel testimony in a criminal investigation, and the witness's assertion of Fifth Amendment privilege.

The Court of Appeals is affirmed.

KAVANAGH, WILLIAMS, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

RYAN, J. On August 13, 1975, David C. Johnson, an inmate at Jackson State Prison, was called before a Wayne County citizens' grand jury pursuant to a writ of habeas corpus ad testificandum. When presented to the grand jury, Johnson refused to be sworn or to answer any questions whatever.[1] He was then taken before a circuit

---

sentence provided for purging, the court classified the contempt as criminal.

[20] Similarly, see *Duval v Duval,* 114 NH 422; 322 A2d 1 (1974); *Ex parte Wilson,* 559 SW2d 698 (Tex Civ App, 1977). But see *Henkel v Bradshaw,* 483 F2d 1386 (CA 9, 1973); *Tetro v Tetro,* 86 Wash 2d 252; 544 P2d 17 (1975); *Otton v Zaborac,* 525 P2d 537 (Alas, 1974); *Commonwealth ex rel Brown v Hendrick,* 220 Pa Super 225; 283 A2d 722 (1971).

[1] The following occurred before the grand jury:

"*The Foreman:* Would you raise your right hand, please?

"Do you solemnly swear that the testimony that you will give before the grand jury will be the truth, the whole truth and nothing but the truth?

"*The Witness:* I'm taking the Fifth Amendment. I don't want no oath.

"*[Assistant Prosecuting Attorney] Mr. Healy:* Give him the oath and then we will worry about the Fifth Amendment.

"*The Witness:* I'm not going to give no oath. I don't know why I'm here.

"*Mr. Healy:* The oath involves your swearing to tell the truth. Then you may assert your Fifth Amendment rights, and I will give you your rights after the oath has been administered.

"*The Witness:* I won't take no oath.

"*Mr. Healy:* Get back on your feet.

judge for a contempt hearing. During this proceeding the assistant prosecuting attorney from the office of the Wayne County Prosecutor, who summoned Johnson before the grand jury, was sworn as a witness and described the defendant's behavior before the grand jury. The trial judge asked the defendant if he wished to question the prosecutor about his testimony or if he wished to make any statement at all about his conduct before the grand jury. Defendant responded to both questions by shaking his head in a negative manner.

The circuit judge found Johnson in contempt, fined him $10,000 and sentenced him to confinement for one year or until the term of the grand jury expired, whichever occurred first. MCL 767.19c; MSA 28.959(3). The judge explained to

---

"*The Foreman:* I will repeat the oath. Please raise your right hand.

"*Mr. Healy:* Do you refuse to take the oath?

"*The Witness:* (No response.)

"*Mr. Healy:* All right. Sit down.

#### "*Examination*

"*Q. [By Mr. Healy]:* You have the right to remain silent. You do have the right to have an attorney present but not in this grand jury room, and the attorney can be outside and you can confer with him at any time. Anything that you say can and will be used against you. Do you understand that?

"*A.* (No response.)

"*Q.* You can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand that?

"*A.* (No response.)

"*Mr. Healy:* Let the record show that the witness has been silent to these questions.

"*Q. [By Mr. Healy]:* Do you want an attorney?

"*A.* (No response.)

"*Q.* If you cannot afford an attorney you may petition the presiding judge of the circuit court for Wayne County and ask for the appointment of an attorney. Do you understand that?

"*A.* (No response.)

"*Q.* I repeat the question: Do you want an attorney?

"*A.* (No response.)

"*Mr. Healy:* Let the record show that the witness refuses to answer any of those questions, as well as taking the oath."

*Johnson* that he could purge himself of the contempt by testifying before the jury panel as to any matter which would not be self-incriminating.

The Court of Appeals reversed the trial court's judgment and sentence, holding that "[t]he Michigan Constitution affords a due process right to counsel in a grand jury contempt proceeding under MCL 767.19c; MSA 28.959(3)". 77 Mich App 426; 258 NW2d 504 (1977). We granted leave to appeal. 402 Mich 848 (1978).

In addressing defendant's claimed right to the assistance of counsel, it is necessary to examine the nature of the proceeding at issue and the interests which may be affected by it.

The principle is elemental that courts have inherent power to enforce compliance with their lawful orders through contempt proceedings. *Shillitani v United States,* 384 US 364, 370; 86 S Ct 1531; 16 L Ed 2d 622 (1966); *United States v United Mine Workers,* 330 US 258, 330-332; 67 S Ct 677; 91 L Ed 884 (1947). Equally basic is the proposition that courts must be able to compel the appearance and testimony of witnesses in judicial proceedings. *United States v Bryan,* 339 US 323, 331; 70 S Ct 724; 94 L Ed 884 (1950). In instances where a witness refuses to obey a court order to appear or testify in a judicial proceeding, the witness may be confined until the court's order is obeyed. *Shillitani v United States, supra,* at 370; *McCrone v United States,* 307 US 61; 59 S Ct 685; 83 L Ed 1108 (1939). Witnesses refusing to appear or testify in response to the summons of the grand jury risk an adjudication of contempt and are subject to a fine of $10,000 and imprisonment not exceeding one year. A contemptuous witness is entitled to purge himself of the contempt and receive commutation of the sentence upon testify-

ing before the grand jury. MCL 767.19c; MSA 28.959(3).[2]

In the case before us the court imprisoned the defendant for the purpose of compelling him to obey the order to testify. The sentence was clearly intended to operate in a prospective manner in order to coerce and not to punish the defendant. In terms of the commonly used expression, "defendant carried the keys of his prison in his own pocket". Because by its very character and purpose such an adjudication and sentence is coercive and remedial, rather than punitive, it is deemed civil in nature. *Shillitani v United States, supra,* at 368; *Sword v Sword,* 399 Mich 367, 380; 249 NW2d 88 (1976). As the court said in *Shillitani, supra:* "While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to testify." *Shillitani, supra,* at 370.

This analysis of the lower court proceedings is significant in order to properly identify the constitutional guarantees to which a defendant is entitled in such proceeding. Because the contempt proceeding is civil in nature, a defendant's right to

---

[2] "Any witness who neglects or refuses to appear or testify or both in response to a summons of the grand jury or to answer any questions before the grand jury concerning any matter or thing of which the witness has knowledge concerning matters before the grand jury after service of a true copy of an order granting the witness immunity as to such matters shall be guilty of a contempt and after a public hearing in open court and conviction of such contempt shall be fined not exceeding $10,000.00 or imprisoned not exceeding 1 year, or both. If the witness thereafter appears before the court to purge himself of such contempt, the court shall order the recalling of the grand jury to afford such opportunity, and after appearance of the witness before the grand jury upon a transcript of the testimony there and then given, the witness shall be brought before the court and after examination, the court shall determine whether the witness has purged himself of the contempt and shall commute the sentence upon a finding that the witness has purged himself."

counsel, if any, must be predicated upon US Const, Am XIV[3] or Const 1963, art 1, § 17.[4] The right to the assistance of counsel, guaranteed by US Const, Am VI,[5] binding upon and applicable to the states via US Const, Am XIV and Const 1963, art 1, § 20,[6] is inapplicable to the contempt proceeding below since that right to assistance of counsel is confined to criminal proceedings.

In *Sword v Sword, supra,* a case involving an adjudication of contempt for disobedience of an order to pay child support, it was argued that on the rational of *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972), the threat of immediate imprisonment for as much as one year

---

[3] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[4] "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."

[5] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[6] "In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

carried with it the right to assistance of counsel. In that connection this Court said:

"The heart of the argument in favor of defendant's constitutional right to an appointed attorney if he is indigent is that he may be incarcerated.

"There is heavy reliance upon *Argersinger v Hamlin,* 407 US 25, 37; 92 S Ct 2006; 32 L Ed 2d 530 (1972), in which the United States [Supreme] Court held that 'absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial'. *Argersinger* contemplates punishment for a criminal act whereas civil contempt is remedial or coercive. The objective is to bring about compliance with a court order entered after trial, not punishment for the offense of which defendant was determined guilty at the time of trial." *Sword, supra,* at 380-381.

While the assistance of counsel guarantees of US Const, Am VI via Am XIV, or Const 1963, art 1, § 20 are not applicable to a civil contempt proceeding, the defendant's due process rights, including the assistance of counsel, must be honored if fundamental fairness in the due process sense requires such assistance.

Drawing upon a portion of this Court's analysis in *Artibee v Cheboygan Circuit Judge,* 397 Mich 54; 243 NW2d 248 (1976), the Court of Appeals in this case focused upon the following three factors in concluding that the defendant had a due process right to counsel at his contempt hearing.

"First, the contempt proceeding is an action in which the power of the state is brought to bear against the defendant."

"Secondly, it is undeniable that a recalcitrant grand jury witness faces a substantial penalty."

"Third, although the grand jury contempt hearing

may not involve complex factual issues, it does involve complex legal and procedural issues."

While the Court of Appeals very understandably looked to *Artibee, supra,* for precedential guidance on the right to counsel issue, we think the Court fixed its focus too narrowly on the three factors it enumerated and failed to distinguish between the nature of the proceeding involved here and those involved in *Artibee.*

While the majority in *Artibee* discussed a number of considerations in reaching the conclusion that in paternity proceedings, Const 1963, art 1, § 17 requires the appointment of counsel for an indigent person, the focus was less upon the three isolated factors enumerated by the Court of Appeals below than upon the broader consideration that paternity pretrial and trial proceedings are very much akin to a criminal prosecution.

In determining whether due process requires the assistance of counsel in paternity proceedings, Justice FITZGERALD wrote:

"Const 1963, art 1, § 17, embodies this state's guarantee of due process of law. An analysis of what process is due in a particular proceeding must begin with an examination of the nature of the proceeding and the interests which may be affected by it. Paternity proceedings are quasi-criminal. The interests of the individuals affected are substantial, and the nature of the proceedings is sufficiently complex so as to require counsel to insure a fair trial.

"The statute requires that the county prosecute the action if the complainant is without the means to employ an attorney. Both Federal and state law provide a monetary incentive to prosecute. A defendant's interest in being free from bodily restraint is directly affected from the beginning of the proceedings, since a

warrant may issue upon the filing of the complaint. Upon arraignment, a defendant's failure to make the required recognizance or cash deposit may result in his commitment to the county jail. Although the immediate consequence of the paternity judgment is an order of filiation and for support, the order is enforceable by contempt proceedings. Penalties for contempt include up to one year in the county jail or state prison or until the amount due is fully paid.

"Not only will an indigent defendant be less likely to remain free from bodily restraint, but also an uncounseled defendant will be less able to defend himself at trial against an untrue allegation of paternity. In contrast with support ordered following divorce, there is often a sharply disputed factual question concerning the relationship of the parties to a paternity action. The object of the proceedings is to determine with finality the obligation of support, and not merely to determine on the basis of present circumstances an appropriate level of support. An unrepresented paternity defendant may be unaware of his obligation to file notice of alibi if he intends to rely upon that defense. He may be unaware of his statutory right to demand blood tests or unable to analyze the legal implications of the results." *Artibee, supra,* pp 56-58.

Thus, in *Artibee,* there was involved the adversary process of quasi-criminal litigation with all the procedural complexities incident to warrant issuance, arraignment, setting bail, discovery, notice of defenses, jury voir dire and challenge, pretrial motions, the examination and cross-examination of witnesses expert and otherwise, closing argument, instructions to the jury, and verdict. By contrast, a civil contempt proceeding for failure to testify before a grand jury, while carrying potentially severe consequences, involves virtually none of the procedural and substantive complexities of a paternity trial. It is a proceeding of a summary

character with a purely remedial purpose.[7] Normally such a proceeding, as is the case here, involves a single, simple issue: will the witness answer the question put to him in whatever fashion he deems appropriate or, upon refusal to answer, be imprisoned for the refusal? Typically, as seen in this case, the proceeding is brief, simple to understand and does not involve the complexities of fact-finding, jury persuasion or resolution of sophisticated legal issues.

We wish to emphasize that while it is true that in civil contempt proceedings of the kind involved here, the defendant faces the serious prospect of immediate imprisonment for up to one year and a fine not to exceed $10,000, those dire consequences *alone* do not create a due process right to counsel. It is the potential complexity of the proceedings which may result in imposition of the serious penalties and not the penalties themselves which implicate the assistance of counsel guarantee of the Due Process Clause.

Stated otherwise, due process does not require counsel in every instance in which the possibility of imprisonment exists, but depends upon circumstances showing that in view of the nature of the proceedings the defendant would probably suffer unfair treatment if counsel were not provided. See *Gagnon v Scarpelli,* 411 US 778, 787-791; 93 S Ct 1756; 36 L Ed 2d 656 (1973); *Sword v Sword, supra,* at 381-383.

While in *Argersinger v Hamlin, supra,* the court focused upon the fact of imprisonment for six

[7] Civil contempts not "committed in the immediate view and presence of the court" may not be *punished* summarily. MCL 600.1711(1); MSA 27A.1711(1). (Emphasis supplied.) However, such contempts may be punished after a hearing, summary in character, at which proof of the contempt has been made and opportunity has been given to defend. MCL 600.1711(2); MSA 27A.1711(2).

months in declaring the existence of a Federal constitutional right to counsel in a misdemeanor prosecution, it must be remembered the Court did so only in cases of criminal prosecution.

That is not the case before us. The defendant, Johnson, is charged with no crime, faces no conviction or final adjudication and cannot be made to suffer an involuntary penalty. By obeying the court's order to appear and give testimony before the grand jury, the defendant can purge himself of the adjudication of contempt and cause his sentence to be commuted.

Instead of the three factors delineated by the Court of Appeals as the appropriate criteria to be examined for determining whether there is a due process right to counsel in a civil contempt proceeding of any kind, we think the following to be a better standard:

If there exists a reasonable likelihood that the civil contempt proceedings by their very nature involve matters of such factual, procedural or substantive complexity that it must be concluded that without the assistance of counsel the defendant is unlikely to be capable of understanding the nature of the proceedings, articulating his position or appreciating the options available to him, or any one of them, then it must be said that the process due him includes the assistance of counsel.

Certainly all civil contempt proceedings for all defendants do not present such a situation. The need for assistance of counsel as a due process requirement must be determined on a case-by-case basis.

Here, the defendant, in the grand jury chambers, before being asked any questions at all, refused to be sworn. After the prosecuting attorney advised him of his right to remain silent when

questioned, of the fact that anything he said could be used against him and that he had a right to the assistance of counsel and, if indigent, appointed counsel, he was asked if he understood. He refused to answer. When asked if he wanted an attorney he again refused to respond.

In view of the defendant's obvious willful refusal to cooperate with the grand jury and the court, even to the point of refusing to indicate before the grand jury whether he understood what was being said to him, or whether he wished the assistance of counsel during the intended grand jury interrogation and merely nodding his head when asked by the court whether he had anything he wished to say, it cannot be reasonably concluded that he was treated unfairly or that the nature of the proceedings, either procedural or substantive, was such that without the assistance of counsel fair treatment was not possible.[8]

---

[8] The verbatim record of the contempt proceeding, conducted in accordance with MCL 600.1711(2); MSA 27A.1711(2), is as follows:

*"The Clerk:* In the matter of David C. Johnson.

*"Mr. Healy:* If the court please, I am Robert H. Healy, chief trial attorney for the Wayne County Organized Crime Task Force. I bring to the court David Charles Johnson who is down here on a writ from Jackson Prison under a lawful subpoena to appear before the Wayne County grand jury of this date.

*"The Court:* Mr. Johnson, have you been duly served with a subpoena to appear before the grand jury?

*"The Defendant:* I don't know. I don't know what this is.

*"The Court:* Mr. Healy, I think that it is going to be necessary for you to have an oath administered to you and to make a further statement as to why you are here this afternoon.

"(Whereupon, Robert H. Healy was duly sworn on his oath by the clerk.)

*"Mr. Healy:* Do you want me to just give a narrative?

*"The Court:* Please do.

*"Mr. Healy:* If the court please, the grand jury is engaged in the investigation of a homicide. Pursuant to that investigation, we caused David Charles Johnson to be removed from Jackson Prison and brought down to the Wayne County Citizens Grand Jury pursuant to a writ of habeas corpus by the Honorable Myron H. Wahls, judge of the circuit court. The witness, David Charles Johnson was presented

While we agree with the Court of Appeals that exceptional cases may arise in which due process

---

to the grand jury this morning and I was the prosecuting officer for the grand jury. There were 14 grand jurors present and the court reporter. The witness was asked to take the oath by the grand jury foreman. I was present during that and have personal knowledge of it. He refused. I then attempted to give him his constitutional rights as well as his statutory rights concerning his right to counsel. He would not acknowledge no questions *[sic]* put to him by me, as again, he would not acknowledge the giving of the oath. We therefore terminated his presence before the grand jury and I ordered that he be remanded to the detention area on the seventeenth floor of this building, pending disposition by you.

*"The Court:* Mr. Johnson, do you wish to ask Mr. Healy about any statement that he has made concerning your conduct this morning before the Wayne County Citizens Grand Jury?

*"The Defendant:* (Nods head.)

*"The Court:* Let the record reflect that Mr. Johnson indicated no by nodding his head in a negative manner. Do you have anything that you would like to say at all at this time?

*"The Defendant:* (Nods head.)

*"The Court:* Again, let the record reflect that Mr. Johnson has indicated a negative answer by nodding his head in such manner. Mr. Johnson, the court, based upon Mr. Healy's testimony, is going to find you guilty of contempt pursuant to the provisions of Michigan Compiled Laws Annotated, § 767.18c *[sic].* The court is going to punish you in the following manner: fine you in the sum of $10,000, commit you to the Wayne County Jail for a period of not more than one year unless prior to the expiration of such year, you come before this court, in a good faith manner, and are willing to purge yourself of the contempt by answering questions or testifying before the grand jury as to those matters that would not incriminate you if you did in fact invoke your privilege against self-incrimination. A further proviso insofar as the one year commitment is concerned, absent purging, your one year commitment is to be served unless the citizens grand jury term expires prior to your serving the one year term in the Wayne County Jail. He is to be committed to the Wayne County Jail until he purges himself or until the grand jury term expires.

*"Mr. Healy:* Your Honor, I have one further matter and that is he is down here on a writ of habeas corpus and I am not sure what we should do about relieving the Michigan State Police of their accountability for the prisoner at Jackson. I guess what we do is release this writ. With the release of this writ—

*"The Court:* I have a commitment order for conveyance to the Wayne County Jail.

*"Mr. Healy:* Can we get the commitment order so that the State Police then will be off the hook?

*"The Court:* I think that your office will have to prepare that.

*"Mr. Healy:* Okay. Thank you, your Honor."

See fn 7, *supra.*

will require the appointment of counsel in contempt proceedings brought for refusal to testify before a grand jury, this case is not one of them. We decline to adopt a sweeping rule requiring the assistance of counsel in all civil contempt cases of this character in order to fit the exceptional one.

The decision of the Court of Appeals is reversed.

COLEMAN, C.J., concurred with RYAN, J.