776 A.2d 631

**Terrence Lynn ZETTY,**

v.

**Susan M. PIATT.**

**No. 144, Sept. Term, 2000.**

Court of Appeals of Maryland.

July 16, 2001.

David P. Sutton, Baltimore (Arnold P. Popkin, Suitland), all on brief, for petitioner.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, Amanda S. La-Forge, Staff Attorney, Baltimore and Sue A. Cusick Greer, Assistant County Attorney of LaPlata), all on brief, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On September 7, 2000, the Circuit Court for Charles County found Terrence Lynn Zetty, appellant,[1] to be in constructive civil contempt of a domestic violence protective order that was issued on April 27, 2000. The Circuit Court found that appellant had violated the protective order by apparently

---

1. It is not exactly clear who the appellee is in the contempt proceedings, including this particular appeal. Ms. Piatt did not initiate the contempt proceeding and has not participated in it, even though she is stated as the appellee on counsels' briefs. At oral argument, counsel from the Attorney General's office, who filed a brief for the appellee and was arguing before this Court on behalf of appellee, was unable to clarify exactly who the appellee is in this case.

failing to turn in all firearms that were in his possession to the Charles County Sheriff's Office. The Circuit Court sentenced appellant to 179 days of incarceration unless appellant purged the contempt by turning in the firearms or by producing evidence that he was no longer in possession of the firearms. Appellant filed a Motion for Reconsideration, which was denied by the Circuit Court after a hearing.

Appellant filed an appeal to the Court of Special Appeals. We granted certiorari on our own initiative prior to consideration by the Court of Special Appeals. Appellant has presented four questions:

1. Whether Zetty was erroneously held in constructive contempt and incarcerated in violation of his right to counsel[?]

2. Whether the constructive contempt proceeding was without force and effect because initiated by an unauthorized person (police officer in Office of the County Sheriff) who lacked standing to file the contempt petition[?]

3. Whether the order of contempt impermissibly extends beyond the findings made in the antecedent civil proceeding and lacks substantial evidentiary support[?]

4. Whether the overriding criminal character of the contempt proceeding required that Zetty be granted the right to trial by jury and the benefit of the standard of proof beyond a reasonable doubt[?] [2]

---

**2.** The contempt proceeding in the case at bar was a constructive civil contempt. In *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973), we stated that:

Today, the line between civil and criminal contempt is frequently hazy and indistinct. Often the same acts or omissions may constitute or at least embrace aspects of both. *Tyler v. Baltimore County,* 256 Md. 64, 259 A.2d 307 (1969). When this is the case, an alleged contemnor may be answerable in either a civil or criminal contempt proceeding. But, in this State, the distinction between the two types of contempt has been preserved and is important. *A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties.* These proceedings are generally remedial in nature and are

We answer yes to questions one and two and, therefore, we reverse the Circuit Court's finding of contempt. We hold that the Circuit Court did not comply with Maryland Rule 15–206(e), which provides that when incarceration is sought in a constructive civil contempt hearing and an alleged contemnor appears in court without counsel, the court must confirm that the alleged contemnor received a notice of the right to counsel and that the alleged contemnor knowingly and voluntarily waives that right. We also hold that the Charles County Sheriff's Office is not an authorized party, in accordance with Maryland Rule 15–206(b), to file a petition for contempt that initiates a constructive civil contempt proceeding and that alleges a violation of a protective order. We do not need to answer questions three and four.

## Facts

On April 20, 2000, Susan M. Piatt filed a Petition for Protection from Domestic Violence under Maryland Code (1984, 1999 Repl.Vol., 2000 Supp.), section 4–504 of the Family Law Article. In the petition, Ms. Piatt alleged that on the previous day appellant had been sitting in his truck in front of the residence that the two of them shared. Ms. Piatt attempted to remove the keys from the ignition of appellant's truck while appellant was seated in the driver's seat because she feared that appellant was under the influence of drugs and alcohol. The petition stated that as Ms. Piatt reached into the

---

intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. *On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy.* Therefore, such a penalty does not require a purging provision but may be purely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt-a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt. *Winter v. Crowley,* 245 Md. 313, 226 A.2d 304 (1967); *Donner v. Calvert Distillers Corp.,* 196 Md. 475, 77 A.2d 305 (1950).

*Id.* at 728, 298 A.2d at 876 (emphasis added). The contempt proceeding in the case *sub judice* was initiated to coerce compliance with the Protective Order. The penalty imposed by the Circuit Court, in order to obtain compliance, contained purging provisions.

truck to take the keys, appellant drove off with her arm still inside the truck causing her arm to strike against the truck as she attempted to remove it. Ms. Piatt also alleged that appellant turned the truck around and accelerated as if he was going to hit her and her father with the truck as they stood on the side of the street. Ms. Piatt stated that she ran into the house and called the police because she was afraid of appellant.

On April 27, 2000, a hearing was held before the Circuit Court for Charles County on Ms. Piatt's Petition for Protection from Domestic Violence. At the end of the hearing, the Circuit Court found by clear and convincing evidence that Ms. Piatt had been placed in fear of imminent serious bodily harm by appellant. The Circuit Court, therefore, entered a protective order. The Circuit Court stated:

I am convinced of that [a fear of imminent serious bodily harm] by clear and convincing evidence and having been so convinced it is my duty to enter a protective order. The protective order that I am going to enter in this case is going to continue—it will begin today and continue for one year. That is it will expire on the 26th day of April in the year 2001.

And the protective order will provide that Mr. Zetty shall not abuse or threaten to abuse Ms. Piatt. That he shall not contact, attempt to contact or harass her. Contact includes contacting her in person, by telephone, in writing or by any other means.

It is going to provide that he is not to come to her residence that they lease on a monthly basis, the residence at 3683 Brookwood Drive in White Plains. I am going to allow her to stay there. And he, Mr. Zetty is not to come to that residence.

He is not to come to her place of employment at 3475 Leonardtown Road in Waldorf. He is to vacate the home at 3683 Brookwood Drive in White Plains and for the remainder of that lease it will be the use and possession of that home will be given to Ms. Piatt.

Mr. Zetty accompanied by law enforcement officers from the Charles County Sheriff's Department may return to that residence to collect his clothing and personal necessities and he may make those arrangements with the Sheriff's Office.

*It also is going to provide that he is to surrender all firearms that are in his possession to the Charles County Sheriff's Department for the duration of this protective order.*[3]

Now, this is what is going to happen. The Sheriff is going to serve both of you with a copy of this order. The Sheriff for Charles County is going to keep a copy of the order. If there is a violation of the order then you should contact the Sheriff, tell them that the order is being violated and they will respond to it.

They have the authority to arrest somebody for violating this order and to put them in jail. If there is a violation of the order you can also file a petition for contempt and if after a hearing I find that there has been a violation of the order I can sentence someone to serve up to 90 days in jail and fine them up to $500 for each violation. It is my order. The only way I have to enforce it is to enforce it by contempt. If either of you violate it there is a very good probability that I will put you in jail for the period of time that I am permitted to do. [Emphasis added.]

On May 5, 2000, Corporal J.C. Holter of the Charles County Sheriff's Office contacted appellant to find out if appellant had any firearms to surrender pursuant to the protective order entered by the Circuit Court. Appellant informed Officer Holter that he was not in possession of any firearms. Officer Holter then contacted the Maryland State Police and requested that they run a search on the Maryland Automated Firearms Services System database to check whether appellant had any firearms registered in his name. The search revealed that, as of at least June 18, 1997 (some thirty-four months

---

**3.** Maryland Code (1984, 1999 Repl.Vol., 2000 Supp.), section 4–506(d)(12) provides for the inclusion of such a provision.

prior to the entry of the protective order), appellant had nine firearms legally registered in his name.

On August 31, 2000, Officer Holter filed a Petition for Contempt in the Circuit Court for Charles County. The petition stated that Officer Holter was the petitioner and that Mr. Zetty [4] was the respondent. The petition alleged that Officer Holter had contacted appellant about surrendering any firearms that appellant had in his possession and that appellant told Officer Holter that he did not have any firearms. This statement, it was alleged, was contrary to the information provided to Officer Holter by the Maryland State Police that indicated that appellant had nine firearms registered in his name. On September 1, 2000, the Circuit Court, pursuant to the petition filed by Officer Holter, issued a Show Cause Order requiring appellant to appear before the Circuit Court and show cause as to why he should not be found in contempt of the protective order for failing to give his firearms to the sheriff's office.

On September 7, 2000, a hearing was held on the Petition for Contempt before the Circuit Court. Appellant appeared but was not represented by counsel. Officer Holter testified that he had contacted appellant about turning in any firearms to the sheriff's office in compliance with the protective order. Officer Holter stated that appellant told him in a phone conversation that he did not have any firearms, even though the Maryland State Police informed Officer Holter that appellant had nine firearms registered in his name.

Appellant testified at the contempt hearing that he had no recollection of ever speaking to a police officer about possessing firearms. Appellant did not deny that he had owned the firearms listed on the report from the Maryland State Police; however, appellant stated that the firearms and their identifying documents were stolen from his residence in March of 1998, approximately two years before the protective order was entered. Appellant testified that he reported that the fire-

---

4. As stated, *supra*, Mr. Zetty is the appellant in the case *sub judice*.

arms had been stolen to the Prince George's County Police Department, but that the police department was unable to provide him with any assistance in locating the firearms.

At the conclusion of the contempt hearing, the Circuit Court sentenced appellant to 179 days of incarceration; however, the incarceration could be purged. The Circuit Court stated that:

> I find you in contempt and commit you to jail for a period not to exceed a period of 179 days. You can purge yourself of this contempt by producing each and every—by having an agent do it for you—each and every of the firearms mentioned in what's Court's Exhibit 2 in this proceeding or a documentary receipt from somebody acknowledging having obtained it from you or from a third person; that's the second possibility. And the third possibility is by producing a report from the Prince George's County Police Department from June of 1998 reflecting that you did report to them, at that time, that guns had been taken from your Surratts Manor Drive Home.
>
> We want the guns, we want receipts for them or we want documentation that you reported it to the police, and you sit in this jail until that happens, until one of those three things happen.

On September 11, 2000, appellant filed a Motion for Reconsideration of the Circuit Court's finding of contempt and the sentence imposed. In his motion, appellant stated that no evidence was presented at the original protective order hearing or at the contempt hearing that proved that appellant possessed a firearm on April 27, 2000, the day of the protective order hearing, or any day thereafter. The Motion for Reconsideration was set for a hearing on September 27, 2000.

At the hearing on the Motion for Reconsideration, appellant's first argument, through counsel, was that even if he was contacted by Officer Holter, which he did not remember, any statements he made that he had never been in possession of firearms were pertaining to the period of time since the protective order had been entered. Appellant stated that if he had the firearms, they were properly bought and registered,

so he would not have a problem turning the firearms into the sheriff's office because the firearms would be returned to him when the protective order ended on April 26, 2001. Appellant also argued that he called the Prince George's County Police Department when he noticed that the firearms were missing and he is trying to obtain documentation of the police records. Appellant stated that during the protective order hearing, the Circuit Court[5] stated that the maximum punishment for a violation of a protective order was a $500.00 fine or ninety days in jail, yet appellant was sentenced to 179 days of incarceration. Appellant then alleged that Officer Holter did not have standing to file the contempt petition and that there was not clear and convincing evidence of appellant being in possession of firearms. Appellant's counsel stated that:

Keep in mind, Your Honor, I don't even think that Sheriff Holter has standing. This is a civil case. This is a protective order. It is not Susan Piatt who is suggesting that my client is in violation. She hasn't filed anything. She's never suggested that my client has violated the protective order. She's never suggested that he's had guns.

So the question is in a civil case can Sheriff Holter firstly file a petition and, second of all, Your Honor, was there evidence, credible evidence, clear and convincing evidence, I think would be the standard in contempt,[6] that my client had on April 27th or any day thereafter up until the hearing before Your Honor on September 7th, had in his possession firearms.

Your Honor, I would proffer if we had another hearing in this case, his son and daughter would testify, his mother and

---

**5.** The protective order hearing and the constructive civil contempt hearing were presided over by different judges. The same judge presided over the contempt hearing and the hearing on the Motion for Reconsideration.

**6.** We have held that "civil contempt is proven by the preponderance of the evidence; criminal contempt must be established beyond a reasonable doubt." *Middleton v. Middleton,* 329 Md. 627, 643, 620 A.2d 1363, 1371 (1993). *See* Note 2.

father would testify that they have never seen, ever heard anything about guns after April 27th, 1998–after 2000.

Appellant then argued that even if the Circuit Court found that the grounds for the finding of contempt were justified, appellant had already served twenty days in jail and that should be a sufficient punishment. Appellant's counsel stated:

> I am respectfully suggesting, Your Honor, that you should conclude today respectfully that my client is not in contempt, certainly, Your Honor, regardless of the ultimate finding of Your Honor, conclude that 20 days in jail is sufficient. Today I think is the 21st day.
>
> My client can't reasonably purge himself of contempt based on the order in this case, if he doesn't have the guns, can't produce the guns, he doesn't have third parties' names he can produce that have these guns. It would take another ten days before we get something back from Prince George's County.

The Circuit Court first held that Officer Holter had standing to file the contempt petition. The Circuit Court stated:

> First, since Officer Holter is a functionary of the agency that the Court charged with several duties under this protective order and since I would note parenthetically the local Sheriff's Office has a grant from somebody on high, I think in Annapolis, specifically with which to man the service of and the execution of provisions of these orders. The general expectation is that the Sheriff's Office is an enforcement agency with regard to the provisions of these protective orders.
>
> And it is certainly the law that Officer Holter could have gone, and may have for all I know, but certainly could have gone to a commissioner and filed a criminal complaint against Mr. Zetty. He has standing to do that. If he has standing to do that, I would certainly like to think he has standing to be the complainant in a contempt context. And if he doesn't have such standing, the law needs to be changed. I think he does have standing in several senses of that term.

The Circuit Court went on to hold that its evidentiary findings from the earlier contempt hearing were correct and that the facts showed that appellant's actions had the effect of violating one of the provisions of the protective order. The Circuit Court did, however, amend the purge provision of the contempt order. The Circuit Court held that:

> We can modify the order to provide that the purge can include submission to me of some other document from the Prince George's police agency reflecting contact of some sort with Mr. Zetty during the month of June of 1998 when he says he told them about the missing guns. There ought to at least be a call sheet or dispatch sheet or something. I find it very difficult to imagine that any responsible police agency would not file what our people call a supplemental report with regard to the mention of missing guns.

The Circuit Court then set an appeal bond at $50,000.00 security. Appellant filed an appeal and we granted certiorari.

### Discussion

We hold that the Circuit Court for Charles County improperly held a constructive civil contempt hearing, where incarceration is sought, by not confirming when appellant appeared at the contempt hearing without counsel, that appellant had received a notice of his right to counsel and had knowingly and voluntarily waived his right to counsel. We also hold that neither the Charles County Sheriff's Office, nor one of its officers, individually, may be a party that can initiate a constructive civil contempt proceeding under Rule 15–206(b).

### A.  Rule 15–206

We commence our analysis of the application of Rule 15–206 by examining the proper standards for the interpretation of the Maryland Rules. In *Johnson v. State*, 360 Md. 250, 757 A.2d 796 (2000), we stated that:

> With respect to the interpretation of the Maryland Rules, this Court has stated that, "[t]he canons and principles which we follow in construing statutes apply equally to an interpretation of our rules." *State v. Romulus*, 315 Md.

526, 533, 555 A.2d 494, 497 (1989). In order to effectuate the purpose and objectives of the rule, we look to its plain text. *See Adamson v. Correctional Medical Serv., Inc.*, 359 Md. 238, 250–51, 753 A.2d 501, 507–08 (2000); *Huffman v. State*, 356 Md. 622, 628, 741 A.2d 1088, 1091 (1999). To prevent illogical or nonsensical interpretations of a rule, we analyze the rule in its entirety, rather than independently construing its subparts. *See Marsheck v. Board of Trustees of the Fire & Police Employees' Retirement System of the City of Baltimore*, 358 Md. 393, 403, 749 A.2d 774, 779 (2000). If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule. *See Adamson*, 359 Md. at 250–51, 753 A.2d at 507–08; *Marsheck*, 358 Md. at 402–03, 749 A.2d at 779; *Huffman*, 356 Md. at 628, 741 A.2d at 1091.

The venerable plain meaning principle, central to our analysis, does not, however, mandate exclusion of other persuasive sources that lie outside the text of the rule. *See Adamson*, 359 Md. at 251–52, 753 A.2d at 508; *Marsheck*, 358 Md. at 403, 749 A.2d at 779. We have often noted that looking to relevant case law and appropriate secondary authority enables us to place the rule in question in the proper context. *See Adamson*, 359 Md. at 251–52, 753 A.2d at 508; *Marsheck*, 358 Md. at 403, 749 A.2d at 779.

*Id.* at 264–65, 757 A.2d at 804. In *Holmes v. State*, 350 Md. 412, 712 A.2d 554 (1998), we stated that:

We recently reiterated the longstanding principles of construction that are applied with regard to the Maryland rules.

"In construing a rule, we apply principles of interpretation similar to those used to construe a statute. First, we must examine the 'words of the rule, giving them their ordinary and natural meaning.' Where the language of the rule is clear and unambiguous, our analysis ends."

*State v. Harrell*, 348 Md. 69, 79–80, 702 A.2d 723, 728 (1997) (citations omitted)(quoting *In re Victor B.*, 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994)). Where the language of the rule

is ambiguous, this Court will examine the history of the rule to aid in determining the "reasonable intendment of the language used in the light of the purpose to be effectuated." *Long v. State,* 343 Md. 662, 668, 684 A.2d 445, 448 (1996). "The ultimate goal of this Court is 'to give the rule a reasonable interpretation in tune with logic and common sense.' " *Harrell,* 348 Md. at 80, 702 A.2d at 728 (quoting *In re Victor B.,* 336 Md. at 94, 646 A.2d at 1016). With this goal in mind, Maryland rules "dealing with the same subject matter will be construed so as to harmonize with each other and not produce an unreasonable result." *Johnson v. State,* 274 Md. 29, 41, 333 A.2d 37, 43 (1975). Furthermore, absent a clear indication to the contrary, we shall assume that the rule "was not intended to amend, nullify, or supersede the common law." *See Richwind v. Brunson,* 335 Md. 661, 672, 645 A.2d 1147, 1152 (1994).

*Id.* at 422, 712 A.2d at 558–59.

Maryland Rule 15–206 provides, in relevant part, that:

**Rule 15–206.   Constructive civil contempt.**

(a) **Where filed.**  A proceeding for constructive civil contempt shall be included in the action in which the alleged contempt occurred.

(b) **Who may initiate.**  (1) The court may initiate a proceeding for constructive civil contempt by filing an order complying with the requirements of section (c) of this Rule.

(2) Any party to an action in which an alleged contempt occurred and, upon request by the court, the Attorney General, may initiate a proceeding for constructive civil contempt by filing a petition with the court against which the contempt was allegedly committed.

(3) In a support enforcement action where the alleged contempt is based on failure to pay spousal or child support, any agency authorized by law may bring the proceeding.

. . .

(e) **Waiver of counsel if incarceration is sought.**  (1) Applicability.  This section applies if incarceration is sought and applies only to court hearings before a judge.

(2) Appearance in court without counsel. (A) If the alleged contemnor appears in court without counsel, the court shall make certain that the alleged contemnor has received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice in accordance with Rule 9–207 d;

(B) If the alleged contemnor indicates a desire to waive counsel, the court shall determine, after an examination of the alleged contemnor on the record, that the waiver is knowing and voluntary;

(C) If the alleged contemnor indicates a desire to have counsel and the court finds that the alleged contemnor received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice pursuant to Rule 9–207 d, the court shall permit the alleged contemnor to explain the appearance without counsel. If the court finds that there is a meritorious reason for the alleged contemnor's appearance without counsel, the court shall continue the action to a later time and advise the alleged contemnor that if counsel does not enter an appearance by that time, the action will proceed with the alleged contemnor unrepresented by counsel. If the court finds that there is no meritorious reason for the alleged contemnor's appearance without counsel, the court may determine that the alleged contemnor has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing.

(3) Discharge of counsel. If an alleged contemnor requests permission to discharge an attorney whose appearance has been entered, the court shall permit the alleged contemnor to explain the reasons for the request. If the court finds that there is a meritorious reason for the alleged contemnor's request, the court shall permit the discharge of counsel, continue the action if necessary, and advise the alleged contemnor that if new counsel does not enter an appearance by the next scheduled hearing date, the action will be heard with the alleged contemnor unrepresented by counsel. If the court finds (A) that the alleged contemnor

received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice in accordance with Rule 9–207 d. and (B) that there is no meritorious reason for the alleged contemnor's request, the court may permit the discharge of counsel but shall first inform the alleged contemnor that the hearing will proceed as scheduled with the alleged contemnor unrepresented by counsel.

## B. Right to Counsel

On September 7, 2000, a constructive civil contempt hearing was held at which time appellant was found to be in contempt of a protective order and was sentenced to 179 days of incarceration. During the hearing, appellant was not represented by counsel and the record does not reflect that the court made any attempt to determine if appellant knew of his right to counsel or if he had knowingly and voluntarily waived his right to counsel. Rule 15–206(e) requires a court, prior to a constructive civil contempt hearing when incarceration is being sought,[7] as it was in this case, to determine whether an alleged contemnor received a notice informing the alleged contemnor of his or her right to counsel and if the alleged contemnor waives counsel the court must confirm on the record that the waiver is knowing and voluntary. The Circuit Court in the case *sub judice* failed to take those steps.

We have held that in a constructive civil contempt proceeding, where incarceration is being sought, the alleged contemnor has a right to counsel or the alleged contemnor must knowingly and voluntarily waive the right to counsel. In *Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228 (1983), Mrs. Rutherford filed a petition to hold her husband, Mr. Rutherford, in contempt for his failure to pay child support as required by a divorce decree. At the contempt hearing before

---

7. The back of the Show Cause Order issued by the Circuit Court pursuant to the petition stated that "[i]t is alleged that you have disobeyed a court order, are in contempt of court, and should go to jail until you obey the Court's order."

the Circuit Court for Anne Arundel County, Mr. Rutherford stated that he could not afford an attorney and the Circuit Court did not further advise Mr. Rutherford of his right to have counsel appointed. In *Rutherford,* we held that not only was a defendant entitled to be represented by counsel in a civil contempt proceeding where incarceration was being sought, we also held that an indigent defendant had the right to have counsel appointed. Judge Eldridge, writing for this Court, stated that:

Nevertheless, the constitutional right to counsel is broader than the specific guarantee of the Sixth Amendment and Article 21 of the Declaration of Rights. Under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting critical stages of criminal trials. *Lassiter v. Department of Social Services,* 452 U.S. 18, 25–31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Vitek v. Jones,* 445 U.S. 480, 496–499, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Gagnon v. Scarpelli,* 411 U.S. 778, 789–791, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *In re Gault,* 387 U.S. 1, 34–41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *State v. Bryan,* 284 Md. 152, 159 n. 6, 395 A.2d 475 (1978); *Dorsey v. Solomon,* 604 F.2d 271, 275 (4th Cir.1979); *Johnson v. Solomon,* 484 F.Supp. 278, 291–295 (D.Md.1979). Thus in *In re Gault, supra,* the Supreme Court held that as a matter of due process, the right to the assistance of counsel attached to *civil* juvenile delinquency proceedings because of "the awesome prospect of incarceration in a state institution," 387 U.S. at 36–37[, 87 S.Ct. 1428].

In light of *Gault* and similar cases, the overwhelming majority of courts throughout the country have held that due process requires the appointment of counsel for indigents in *civil* contempt proceedings if they are sentenced to imprisonment. As pointed out by the United States Court of Appeals for the Eighth Circuit in *United States v. Anderson,* 553 F.2d 1154, 1156 (8th Cir.1977),

"[d]eprivation of liberty has the same effect on the confined person regardless of whether the proceeding is civil

or criminal in nature. We agree with the decisions ...
and hold that the Constitution requires that counsel be
appointed for indigent persons who may be confined
pursuant to a finding of civil contempt."

The same reasoning has been employed in the other cases
holding that the right to appointed counsel for an indigent
attaches in a civil contempt proceeding involving incarcera-
tion: *In re Di Bella*, 518 F.2d 955, 959 (2d Cir.1975) ("the
burden of imprisonment is just as great, regardless of what
we call the order that imposed it"); *Otton v. Zaborac*, 525
P.2d 537, 539 (Alaska 1974) ("deprivation of liberty in non-
support contempt proceedings is as serious a matter as the
restraint of liberty ... in criminal, juvenile, and criminal
contempt proceedings"); *People v. Lucero*, 196 Colo. 276,
584 P.2d 1208, 1214 (1978) ("Labeling the contempt civil and
conditioning the incarceration on a continued refusal to
[comply] ... does not alter the burden of imprisonment");
*Tetro v. Tetro*, 86 Wash.2d 252, 544 P.2d 17, 19 (1975) ("The
grim reality of a ... jail sentence overshadows the technical
distinctions between 'criminal,' 'quasi-criminal,' and 'civil'
violations and demands that the protection of legal advice
and advocacy be given all persons faced with it").

Other cases taking the position that the right to counsel,
including appointed counsel for indigents, attaches in civil
contempt proceedings involving actual incarceration, are *In
re Rosahn*, 671 F.2d 690, 697 (2d Cir.1982); *In re Kilgo*, 484
F.2d 1215, 1221 (4th Cir.1973); *Henkel v. Bradshaw*, 483
F.2d 1386, 1389–1390 (9th Cir.1973); *United States v. Sun
Kung Kang*, 468 F.2d 1368, 1369 (9th Cir.1972); *Mastin v.
Fellerhoff*, 526 F.Supp. 969, 972–973 (S.D.Ohio 1981); *Young
v. Whitworth*, 522 F.Supp. 759, 762–764 (S.D.Ohio 1981);
*P.R. v. District Court, Etc.*, 637 P.2d 346, 350 (Colo.1981);
*Padilla v. Padilla*, 645 P.2d 1327 (Colo.App.1982); *McNabb
v. Osmundson*, 315 N.W.2d 9 (Iowa 1982); *Meyer v. Meyer*,
414 A.2d 236, 239 (Me.1980) (holding of intermediate appel-
late court which was not challenged in Supreme Court); *In
Interest of Holmes*, 355 So.2d 677, 679 (Miss.1978); *Kissel v.
Kissel*, 59 A.D.2d 1036, 399 N.Y.S.2d 781 (1977); *Hickland*

*v. Hickland,* 56 A.D.2d 978, 393 N.Y.S.2d 192 (1977); *Rudd v. Rudd,* 45 A.D.2d 22, 356 N.Y.S.2d 136 (1974); *Jennings v. Jennings,* 42 A.D.2d 568, 344 N.Y.S.2d 93 (1973); *State ex rel. Spencer v. Howe,* 281 Or. 599, 576 P.2d 4 (1978); *Commonwealth ex rel. Brown v. Hendrick,* 220 Pa.Super. 225, 283 A.2d 722 (1971); *Ex parte Hiester,* 572 S.W.2d 300, 302–303 (Tex.1978); *Smoot v. Dingess,* [160 W.Va. 558] 236 S.E.2d 468, 471 (W.Va.1977): *Ferris v. State ex rel. Maass,* 75 Wis.2d 542, 249 N.W.2d 789 (1977); *Brotzman v. Brotzman,* 91 Wis.2d 335, 283 N.W.2d 600 (Wis.App.1979).

A minority rule was set forth by the Supreme Court of Michigan in *Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976). The court in that case held that in a civil contempt proceeding based on the failure to comply with a support order there was a right to appointed counsel for an indigent only when "special circumstances" were present but that "as a general rule" there was no constitutional right to appointed counsel. But later, in *People v. David Johnson,* 407 Mich. 134, 283 N.W.2d 632 (1979), the same court held that there was a due process right to appointed counsel for an indigent in a civil contempt case based upon failure to comply with an order to testify. The court briefly distinguished *Sword* because of different "factors" in the two cases, 407 Mich. at 152, 283 N.W.2d 632.

We believe that the majority view is sound. A defendant's actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair. As repeatedly pointed out in criminal and civil cases, it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel for indigents. With regard to the minority "special circumstances" rule set forth in the *Sword* case, very often the "special circumstances" requiring the assistance of counsel are not apparent until the defendant is represented by counsel. Moreover, the deprivation of liberty is itself a "special circumstance" requiring the assistance of counsel. *Cf. Gideon v. Wainwright, supra,* 372 U.S. at

351, 83 S.Ct. 792 (concurring opinion of Justice Harlan). *See also Scott v. Illinois, supra,* 440 U.S. at 373, 99 S.Ct. 1158 ("that actual imprisonment is a penalty different in kind . . . is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel").

*Id.* at 358–61, 464 A.2d at 234–36 (alteration in original) (footnote omitted); *see Jones v. State,* 351 Md. 264, 273–74, 718 A.2d 222, 227 (1998) (a defendant in a civil contempt proceeding, if incarceration is sought, is entitled to the right to be represented by counsel and is entitled to appointed counsel if indigent); *Redmond v. Redmond,* 123 Md.App. 405, 415, 718 A.2d 668, 673 (1998) ("By now it has been firmly established that a defendant in a civil contempt proceeding has a right to counsel where there is a possibility of imprisonment. . . . Further, this right applies at every stage of such contempt proceeding."); *Fields v. Fields,* 74 Md.App. 628, 633–34, 539 A.2d 708, 711 (1988) ("In the case *sub judice,* the appellant was neither represented by counsel nor was he informed of his right to counsel if indigent. He was clearly not asked whether he was financially able to hire an attorney or whether he needed to have an attorney appointed. Consequently, it is apparent that he could not have waived his right to counsel knowingly and intelligently.").

After examining the transcript from the constructive civil contempt hearing on September 7, 2000, we conclude that appellant appeared at the hearing without counsel and that the Circuit Court failed to ascertain that appellant had received a copy of the order containing a notice of the right to counsel and, further, failed to find that appellant was making a knowing and voluntary waiver of his right to counsel.[8] As

---

**8.** The petition used in this case did not contain a section where the issue of whether incarceration is sought is indicated. A person cannot be incarcerated unless the *petition* contains such a provision. The Show Cause Order, on its reverse side, contained a preprinted statement concerning the possibility of incarceration. In any event, appellant was entitled to counsel and the protective provisions of Rule 15–206(e).

stated, *supra,* we have held that an alleged contemnor has the right to counsel in a constructive civil contempt proceeding if incarceration is being sought. Rule 15–206(e) provides that an alleged contemnor must receive notice of the right to counsel and has to make a waiver, on the record, that is knowing and voluntary if the alleged contemnor proceeds without counsel. The Circuit Court, in the case *sub judice,* failed to comply with Rule 15–206(e). Therefore, the contempt hearing was held in violation of appellant's right to counsel.

Appellee, in its brief to this Court, contends that appellant's right to counsel was not violated. Appellee states that:

Regardless of whether the circuit court failed to conduct a proper waiver of counsel inquiry at the September 7, 2000 hearing, it is undisputed that Mr. Zetty was represented by counsel at the reconsideration hearing held on September 27, 2000, that the same issues presented to the circuit court at the initial contempt hearing were presented for a second time, and that rather than dispute any of the factual findings that the circuit court made at the earlier hearing, Mr. Zetty's counsel on at least two occasions deferred to those findings. . . .

Mr. Zetty has thus already received the same relief, *i.e.,* the right to counsel, that would have been ordered in the form of a remand had he appealed the September 7, 2000 contempt order and succeeded on his right to counsel claim.

We disagree with appellee. As stated in Rule 15–206, appellant is entitled to counsel at the contempt hearing. The hearing on the Motion for Reconsideration was very different from the contempt hearing. At the hearing on the Motion for Reconsideration, no testimony was taken by the Circuit Court. The Circuit Court relied on the factual determinations that it made during the contempt hearing to address any of the grounds raised by appellant's counsel as to why appellant's sentence should be modified. To this effect, the hearing on the Motion for Reconsideration was conducted more in the manner of an appeal where no new evidence is presented and the evidence previously found credible in the record is relied

upon. Moreover, the burdens and standards during reconsideration proceedings are different. If a person's right to counsel is violated at trial, that violation is not cured by providing the person with counsel for their appeal. *See Reed v. Foley*, 105 Md.App. 184, 196–98, 659 A.2d 325, 331–32 (1995). Likewise, generally, if a person has his or her right to counsel violated at a contempt hearing, it is not cured by having counsel at a subsequent reconsideration hearing.

### C. Initiating a Civil Contempt Proceeding

■ Appellant alleges that the contempt proceeding is "without force and effect" because it was initiated by Officer Holter, who was not authorized to initiate a constructive civil contempt proceeding. Appellee contends that the Circuit Court initiated the proceeding for constructive civil contempt "on its own accord by issuing an order that fully complied with the express provisions of the constructive civil contempt rule." We agree with appellant. Officer Holter initiated the contempt proceeding in the case *sub judice* and he was not an authorized party under Rule 15–206(b) to initiate a constructive civil contempt proceeding.

As we have indicated, *supra*, Rule 15–206 provides, in relevant part, that:

(b) **Who may initiate.** (1) The court may initiate a proceeding for constructive civil contempt by filing an order complying with the requirements of section (c) of this Rule.

(2) Any party to an action in which an alleged contempt occurred and, upon request by the court, the Attorney General, may initiate a proceeding for constructive civil contempt by filing a petition with the court against which the contempt was allegedly committed.

(3) In a support enforcement action where the alleged contempt is based on failure to pay spousal or child support, any agency authorized by law may bring the proceeding.

Under the facts of the case *sub judice*, the contempt proceeding was not in a support enforcement action and was not initiated by a party to the proceeding or by the Attorney

General. Therefore, sections (b)(2) and (b)(3) of Rule 15–206 do not apply.

Appellee alleges that the contempt proceeding was in compliance with section (b)(1) because the Circuit Court initiated the contempt proceeding by filing an order in compliance with section (c) of Rule 15–206. Appellee, however, ignores the fact that the Petition for Contempt, which initiated the contempt proceeding, was filed by Officer Holter. The Petition for Contempt that was filed on August 31, 2000, stated that Officer Holter was the petitioner and that Officer Holter was requesting that Mr. Zetty be found in contempt of court. The Circuit Court then issued a Show Cause Order to appellant. It was not the Circuit Court's Show Cause Order that initiated the contempt proceeding, it was the Petition for Contempt filed by Officer Holter that prompted the Circuit Court to then issue the Show Cause Order.[9]

Appellee states in its brief that Officer Holter's Petition for Contempt was just the "catalyst" that permitted the Circuit Court to issue a Show Cause Order. That would be similar to a party to the action in which the alleged contempt occurred, a party authorized to initiate a constructive civil contempt proceeding under Rule 15–206(b)(2), filing a Petition for Contempt, which would serve as a "catalyst" for the court to then issue an order. In that case, the authorized party or "catalyst" would be responsible for initiating the contempt proceeding.

At the hearing on the Motion for Reconsideration, the Circuit Court held that Officer Holter as the "functionary

---

9. We note that in support of the notion that the Petition for Contempt initiated the proceedings, the record shows that Officer Holter filed a Petition for Contempt on June 14, 2000, at which time the Circuit Court refused to sign a Show Cause Order. The Circuit Court stated that it "will not sign this [Show Cause] Order until there is a petition filed that allows me to infer that the Def. [Mr. Zetty] *has weapons* he has failed to surrender." (Emphasis added.) Officer Holter then filed a new Petition for Contempt on August 31, 2000, at which time the Circuit Court signed a Show Cause Order. It is clear that the Circuit Court was waiting for an amplified Petition for Contempt to be filed by Officer Holter that would initiate the contempt proceedings.

of the agency that the Court charged with several duties under this protective order" had standing to file a Petition for Contempt. We disagree with the Circuit Court's interpretation of Officer Holter's standing. The Protective Order stated that appellant shall surrender all firearms to the Charles County Sheriff's Office and that appellant shall arrange to return to his home with the Charles County Sheriff's Office to collect clothing and personal necessities. Rule 15–206 does not provide the sheriff's office with the authority to initiate a constructive civil contempt proceeding. We also point out that the subtitle in the Annotated Code of Maryland that covers domestic violence and protective orders, Maryland Code (1984, 1999 Repl.Vol., 2000 Supp.), Title 4, Subtitle 5 of the Family Law Article, titled "Domestic Violence," does not provide for a police officer to file a Petition for Contempt when a Protective Order has been violated; it merely grants a police officer the authority to arrest a person if the officer has probable cause to believe that the protective order has been violated.[10]

---

**10.** Maryland Code (1984, 1999 Repl.Vol.), section 4–508 of the Family Law Article provides the sanctions for violating an ex parte order or a protective order. Section 4–508 states:

§ **4–508. Sanctions for violating order.**

The temporary ex parte order and protective order issued under this subtitle shall state that a violation of the order may result in:

(1) a finding of contempt;

(2) criminal prosecution; and

(3) imprisonment or fine or both.

Maryland Code (1984, 1999 Repl.Vol.), section 4–509 of the Family Law Article provides the penalties that a person can incur for a violation of an ex parte order or a protective order. Section 4–509 states:

§ **4–509. Penalties.**

(a) *In general.*—A person who fails to comply with the relief granted in an ex parte order under § 4–505(a)(2)(i), (ii), (iii), (iv), or (v) of this subtitle or in a protective order under § 4–506(d)(1), (2), (3), (4), or (5) of this subtitle is guilty of a misdemeanor and on conviction is subject, for each offense, to:

(1) for a first offense, a fine not exceeding $1,000 or imprisonment not exceeding 90 days or both; and

(2) for a second or subsequent offense, a fine not exceeding $2,500 or imprisonment not exceeding 1 year or both.

(b) *Arrest.*—An officer shall arrest with or without a warrant and take into custody a person whom the officer has probable cause to

At the protective order hearing, the Circuit Court [11] understood the difference in the authority to arrest that might exist for a sheriff's office under section 4–509 and the authority of a party to the action to file a petition for contempt under Rule 15–206. The Circuit Court stated that:

Now, this is what is going to happen. The Sheriff is going to serve both of you with a copy of this order. The Sheriff for Charles County is going to keep a copy of the order. If there is a violation of the order then you should contact the Sheriff, tell them that the order is being violated and they will respond to it.

They have the authority to arrest somebody for violating this order and to put them in jail. If there is a violation of the order you [the respective party] can also file a petition for contempt and if after a hearing I find that there has been a violation of the order I can sentence someone to serve up to 90 days in jail and fine them up to $500 for each violation. It is my order. The only way I have to enforce it is to enforce it by contempt. If either of you violate it there is a very good probability that I will put you in jail for the period of time that I am permitted to do.

In examining the language of Rule 15–206 and the penalty provision of Maryland Code (1972, 1999 Repl.Vol.), section 4–509(b) of the Family Law Article, a police officer, in a case in

believe is in violation of an ex parte order or protective order in effect at the time of the violation.

Section 4–508 provides for a sanction of contempt, criminal prosecution, and imprisonment or a fine or both. Section 4–509 gives an officer the authority to arrest a person whom the officer has probable cause to believe is in violation of a protective order. Under the facts of the case at bar, if a sanction of contempt was to be initiated then it should have been initiated by a party authorized by Rule 15–206. If Officer Holter had probable cause to think that appellant was in violation of the protective order, then Officer Holter should have arrested appellant under the authority granted by section 4–509(b), not initiated a constructive civil contempt proceeding.

11. As stated, *supra* note 4, a different judge presided over the protective order hearing then presided over the constructive civil contempt hearing and the reconsideration hearing.

which the officer is not a party, cannot initiate a constructive civil contempt proceeding by filing a Petition for Contempt.

## Conclusion

We hold that appellant was denied his right to counsel and to make a knowing and voluntary waiver of that right. Rule 15–206(e) requires a court, before a constructive civil contempt hearing in which incarceration is being sought, to make sure that an alleged contemnor has received notice of his or her right to counsel and that the alleged contemnor has, on the record, made a knowing and voluntary waiver of that right if the alleged contemnor indicates a desire to waive counsel. The Circuit Court, in the case *sub judice,* failed to follow the requirements of Rule 15–206(e) prior to the constructive civil contempt hearing.

We also hold that the Petition for Contempt should have been dismissed because Officer Holter was not a party that can initiate a constructive civil contempt proceeding under Rule 15–206(b). The contempt proceeding was initiated by the filing of a Petition for Contempt by Officer Holter, not when the Circuit Court filed its Show Cause Order. The contempt proceeding was therefore initiated by a party who did not have the authority under Rule 15–206(b) to initiate the proceeding.

A violation of appellant's right to counsel alone would be grounds for the case to be remanded for an entirely new constructive civil contempt proceeding, if necessary. In the case at bar, however, the contempt proceedings should not have been commenced in the first instance because it was initiated by a person who was not eligible to initiate the proceeding under Rule 15–206(b).

**JUDGMENTS OF THE CIRCUIT COURT FOR CHARLES COUNTY REVERSED; COSTS TO BE PAID BY THE STATE OF MARYLAND.**