802 A.2d 1124

Walter E. BLACKSTON

v.

Yvette BLACKSTON.

No. 1185, Sept. Term, 2001.

Court of Special Appeals of Maryland.

July 2, 2002.

Hallie G. Mantell, Baltimore, for appellant.

Joseph B. Spillman, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellee.

Argued before SALMON, DEBORAH S. EYLER, and RAYMOND G. THIEME, JR. (Ret., Specially Assigned), JJ.

SALMON, J.

The main question to be resolved in this case is whether the trial judge erred when she found that by his inaction an alleged contemnor had waived his right to counsel. The answer to that question depends upon whether the trial judge adequately complied with Maryland Rule 15–206(e). Rule 15–206(e) reads, in material part, as follows:

**Waiver of counsel if incarceration is sought.** (1) Applicability. This section applies if incarceration is sought and applies only to court hearings before a judge.

(2) Appearance in court without counsel. (A) If the alleged contemnor appears in court without counsel, the court shall make certain that the alleged contemnor has received a copy of the order containing notice of the right to

counsel or was advised of the contents of the notice in accordance with Rule 9–208(d); [1]

\* \* \*

(C) If the alleged contemnor indicates a desire to have counsel and the court finds that the alleged contemnor received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice pursuant to Rule 9–208(d), *the court shall permit the alleged contemnor to explain the appearance without counsel. If the court finds that there is a meritorious reason for the alleged contemnor's appearance without counsel, the court shall continue the action to a later time and advise the alleged contemnor that if counsel does not enter an appearance by that time, the action will proceed with the alleged contemnor* unrepresented by counsel. If the court finds that there is no meritorious reason for the alleged contemnor's appearance without counsel, the court may determine that the alleged contemnor has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing.

(Emphasis added.)

We hold, based on the reasoning set forth in *Moore v. State*, 331 Md. 179, 186–87, 626 A.2d 968 (1993), that the court did not comply with the requirements of Maryland Rule 15–206(e). Due to that lapse, the trial judge erred in finding that the

---

1. Maryland Rule 9–208(d) provides:

> **Contempt proceedings; referral for *de novo* hearing.** If, at any time during a hearing on a party's alleged constructive civil contempt, the master concludes that there are reasonable grounds to believe that the party is in contempt and that incarceration may be an appropriate sanction, the master shall (1) set a *de novo* hearing before a judge of the circuit court, (2) cause the alleged contemnor to be served with a summons to that hearing, and (3) terminate the master's hearing without making a recommendation. If the alleged contemnor is not represented by an attorney, the date of the hearing before the judge shall be at least 20 days after the date of the master's hearing and, before the master terminates the master's hearing, the master shall advise the alleged contemnor on the record of the contents of the notice set forth in Rule 15–206(c)(2).

appellant, Walter Blackston, had waived his right to counsel. We shall therefore reverse the judgment of contempt entered against the appellant.

### FACTS

On December 21, 2000, Walter Blackston was charged in the Circuit Court for Baltimore City with constructive [civil] contempt of court for failure to make child support payments in conformity with an order of court dated July 28, 2000. The July 28 order required Mr. Blackston to pay $40.50 per week toward the support of his son, Cory—plus $10 per week to pay a large arrearage. Appellant appeared in court, *pro se,* on March 5, 2001, for a preliminary hearing, at which he was advised of the nature of the charges he faced and his right to counsel. He was also given written and oral information concerning how he could apply to the Office of the Public Defender for assistance if he was unable to afford an attorney.

Mr. Blackston informed the court that he understood his rights. He was then told that if he were found in contempt he could face up to three years imprisonment. The presiding judge also said: "Now, understand sir, that if you appear before me on May 10 without an attorney, I may interpret that you have waived your rights to an attorney, and you will have to represent yourself." The court then set the case in for a hearing on the merits for May 10, 2001.

Mr. Blackston appeared without counsel at the merits hearing. The following colloquy between the trial court and Mr. Blackston took place at the commencement of the hearing:

THE COURT: You were advised of your rights to either retain a private attorney or if you didn't have the monies to retain a private attorney, you were further advised of your rights to go to the Office of the Public Defender and seek an attorney through their office. You appear before this court without an attorney. What have you done to get a lawyer to represent you in this case?

THE DEFENDANT: Well, Your Honor, I went to the Public Defender's Office, and they say with the amount of

money that I made last year that they were not able to help me in obtaining an attorney. Also I had spoken to a private attorney, and for the money that they want, *I don't have any funds to pay them at this time.*

THE COURT: Do you have any documentation to verify anything that you have said to me, sir.

THE DEFENDANT: No, Your Honor. I didn't bring that information with me.

THE COURT: Mr. Blackston, you give me no meritorious reason for being here today without an attorney after this court advised you of your rights to counsel. *And I have determined, sir, that you have waived or given up your rights to an attorney.* Now, the attorney who is representing the State tells me that you wish to proceed here today by not having a hearing, and that you wish to admit that you are in contempt of court; is that correct, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, you need to understand that you have a right to have a hearing here today where the court will hear from the State's witnesses, any witnesses that the State may have on its behalf. And then the court will hear from you and any witnesses that you may have on your behalf and make a decision. So, you have a right to have a hearing here today. But by proceeding by way of an admission, you waive or give up your right to have a hearing. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that what you wish to do?

THE DEFENDANT: It's too late to obtain an attorney?

THE COURT: Sir.

THE DEFENDANT: Yes.

THE COURT: Let me advise you that today is May 10 of 2001. I advised you of your rights to an attorney two months ago.

THE DEFENDANT: Yes.

THE COURT: I am not granting you a postponement to get an attorney. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

(Emphasis added.)

Mr. Blackston then admitted he was in contempt of court. Thereafter, no evidence nor any agreed statement of facts was presented. Instead, a representative of the Office of Child Support Enforcement ("OCSE") proffered what it would have proven had the case been tried. Mr. Blackston was then asked: "Do you have anything you want to add, anything you want to correct, anything you want to modify from what the attorney for the [OCSE] has read into the record?" Mr. Blackston responded by saying that he had suffered a stroke in 1999 and had a cervical disc disorder for which surgery had been postponed on "three or four occasions." He also said that presently the only income he was receiving was unemployment compensation. According to Mr. Blackston, his unemployment compensation was $280 per week, but $160 per week was deducted for current and past due child support, leaving him with only $120 per week. Additionally, he said that he had been given a document by the OCSE showing the child support he owed, but the document did not give him credit for all the monies that he had paid.

The Court found Mr. Blackston in contempt and deferred sentencing until June 25, 2001. At the conclusion of the May 10, 2001, hearing, the trial judge threatened to incarcerate Mr. Blackston on June 25 unless he paid $1,000 toward child support arrears by June 25.

On June 25, appellant appeared with counsel supplied by the Legal Aid Bureau, Inc. His counsel made an oral motion to vacate the finding of contempt. Counsel represented that currently Mr. Blackston was only $253 delinquent in his support payments for the period mentioned in the contempt petition. Defense counsel then presented the court with a document showing that on June 15, 2001, the Internal Revenue Service (IRS) sent the OCSE, on behalf of appellant, a

check for $3,422. This last-mentioned sum represented a tax rebate due Mr. Blackston from the IRS.

The attorney representing the OCSE responded, by saying that the tax rebate monies had not yet been received. OCSE's counsel advised that Mr. Blackston's current outstanding child support delinquency, which dated back to 1994, was $8,232.

Appellant's motion to vacate was denied. Mr. Blackston was "given an opportunity" by the court to pay $1,000 "in Room 419 today." Mr. Blackston then told the court that he had borrowed $1,000 from his mother and, therefore, could pay the money. After payment was made, the trial judge elected not to incarcerate Mr. Blackston or to impose any other penalty. Rather, on July 9, 2001, the court entered an order requiring Mr. Blackston to continue paying support of $40.15 a week for his son's support and an additional $10 a week on the arrears. Mr Blackston noted a timely appeal on July 30, 2001.

## *DISCUSSION*

Appellant contends that, before deciding whether a contemnor has waived counsel by inaction, Maryland Rule 15–206(C)2(c) requires that (1) the court must give the alleged contemnor an opportunity to explain his failure to appear with counsel and (2) the record must clearly reflect that the court considered the reasons given by the alleged contemnor. The appellant cites, *inter alia, Moore v. State, supra,* 331 Md. at 186, 626 A.2d 968, in support of his argument. Appellant maintains that the record in this case—like the one in *Moore*—makes it clear that the trial judge did not truly consider his explanation for appearing without counsel. Instead of making meaningful inquiry concerning the explanation as required, the court simply asked whether appellant could provide "documentation" of his explanation. He had none, but as appellant now points out, he had no prior notice that "documentation" was required.

Appellee answers by making several reassuring statements *viz:* (1) There "is no merit" to Mr. Blackston's claim "that he was found in contempt without properly waiving his right to counsel"; (2) "the record establishes that the circuit court adequately protected Mr. Blackston's rights; (3) "the record demonstrates that ... [appellant] voluntarily and intelligently waived his right to counsel at the May 10, 2001, hearing"; and (4) "the record demonstrates that Mr. Blackston admitted his contempt at the May 10, 2001, hearing after he voluntarily and knowingly chose to appear without counsel ...." Unfortunately for appellee, none of these reassuring statements is supported by the record.

 Maryland law is clear that, if incarceration is sought, an alleged contemnor has a right to be represented by counsel at a contempt hearing. *Zetty v. Piatt,* 365 Md. 141, 160, 776 A.2d 631 (2001). Here, incarceration was sought. If appellant was indigent when he appeared in court on May 10, 2001, he had the right to be represented by a public defender at the hearing. *See Thrower v. Bureau of Support Enforcement,* 358 Md. 146, 150 n. 2, 747 A.2d 634 (2000). *See also Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228 (1983). A violation of Rule 15–206(e), which results in the denial of a right to counsel of an alleged contemnor, entitles the contemnor to a new trial. *Zetty,* 365 Md. at 165, 776 A.2d 631.

In *Moore v. State, supra,* Jerry E. Moore ("Moore") was charged with possession of a handgun in violation of article 27, section 36B, of the Maryland Annotated Code (1957, 1992 Repl.Vol.). 331 Md. at 180, 626 A.2d 968. Moore appeared in District Court in September 1991 and was advised of his right to counsel pursuant to Rule 4–215(a). He showed up again without counsel in District Court on December 10, 1991 (the date set for trial) and prayed a jury trial. *Id.* at 180–81, 626 A.2d 968. The next day he appeared for trial in the Circuit Court for Baltimore City. He was again without counsel. Appellant explained to the trial judge that his attorney was not in court because he had not finished paying his fee. The court and Mr. Moore then had the following exchange:

THE COURT: Sir, obviously you understand that you have the right of representation to counsel?

THE DEFENDANT: Yes, sir.

THE COURT: But we can't postpone these cases or continue these cases indefinitely for you to obtain counsel. We are not going to postpone it any further. It is going to go to trial.

The court finds that you have waived your right of counsel.

THE DEFENDANT: I have no attorney. I don't have any lawyer here.

THE COURT: Well, sir, you have — you had since whatever time that you were arrested until the other day to get a lawyer and finish making the payments, and it hasn't been done.

THE DEFENDANT: I just started working. I have my pay stubs.

THE COURT: Sir, that's fine. I'm sorry. I'm sorry for the problems and difficulties, but if you run into financial difficulty that does not permit you to hire the attorney you desire, you should qualify—you should seek to qualify for the services of the Public Defender.

THE DEFENDANT: If I'm not mistaken, they had told me that by me and my wife working, that we weren't eligible.

THE COURT: Then you have to make other arrangements, sir. I can understand your circumstances and I can understand the situation that you face, but at the same time these cases have to be tried. We cannot wait indefinitely on each individual to decide when they are going to make the final payment to the attorney to hire them. And this case is going to trial, sir.

*Id.* at 182, 626 A.2d 968.

Moore was convicted in the trial court. *Id.* at 180, 626 A.2d 968. He contended on appeal that the trial court erred by refusing "to allow him an opportunity to explain his appear-

ance at trial without counsel and, in so doing, did not make the 'required finding as to whether such reasons were meritorious,' as required by Maryland Rule 4–215(d)." *Id.* at 184, 626 A.2d 968. We rejected those contentions in an unreported decision. *Id.* The Court of Appeals, however, reversed Moore's conviction and remanded the case for a new trial. *Id.* at 186–87, 626 A.2d 968. Judge Robert Bell (now Chief Judge) explained why reversal was required:

We agree with the State that what the rule mandates is that the defendant be allowed an opportunity to explain the reason for appearance without counsel "sufficient to allow the court to determine whether the reason is meritorious." We believe, however, that the record *must also be sufficient to reflect that the court actually considered those reasons.* This record reveals the existence of information relevant to the petitioner's reason for appearing without counsel. Without further inquiry, however, *it could not be determined whether those reasons were meritorious.* Rather than pursue such an inquiry, which was clearly suggested by the circumstances, *the court in effect ignored the relevant information offered by the petitioner* in favor of maintaining its position that "we can't postpone these cases or continue these cases indefinitely for you to obtain counsel."

The fact that a defendant has not finished paying his or her lawyer, without more, may not be a meritorious reason for appearing without counsel. When, however, that defendant's recent employment is added to the mix, it may be. An inquiry may reveal that the defendant delayed in seeking employment or some other reason for concluding otherwise. Similarly, although the proffer that a defendant sought the assistance of the public defender when it became obvious that he or she could not pay private counsel but was refused representation is consistent with a meritorious reason for appearing without counsel, inquiry into the circumstances might reveal that it is not.

While the rule does not require the conduct of an inquiry in any particular form, this does not mean that the court may ignore information relevant to whether the petitioner's

*inaction constitutes waiver; the court is not relieved of the obligation to make such inquiry as is required to permit it to exercise discretion required by the rule.*

*Id.* at 186–87, 626 A.2d 968 (emphasis added).

■ Maryland Rule 15–206(e) is, in substance, identical to Rule 4–215(d),[2] which the Court interpreted in *Moore.* Here, Mr. Blackston told the court he had been turned down for representation by the public defender's office because in 2000 he had earned too much money, but he now could not afford to hire an attorney. On its face, Mr. Blackston's explanation appeared to be meritorious. *See Thrower,* 358 Md. at 150 n. 2, 747 A.2d 634 ("If an indigent person contacts the Public Defender ... and is declined representation, his or her appearance without counsel must be regarded as meritorious."). After all, appellant said he could not afford counsel, and the fact that his 2000 income may have been adequate to retain counsel did not refute his claim that in May 2001 he was indigent. Under such circumstances, the trial court was duty bound to question Mr. Blackston as to his economic circumstances before deciding whether his explanation had merit. *Moore,* 331 Md. at 187, 626 A.2d 968 ("[T]he court is not relieved of the obligation [of making] such inquiry as is required to permit it to exercise discretion required by the rule."). In sum, we conclude that the trial court here, as in

---

**2.** Maryland Rule 4–215(d) reads:

**Waiver by inaction—Circuit court.** If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit to explain the appearance without counsel. If court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

*Moore,* did not make sufficient inquiry to allow it to properly determine whether appellant was in fact too impecunious to afford counsel.

■ Appellee contends that the issue of whether the trial court erred in finding that appellant had waived counsel was not preserved because the issue was not raised below. For this proposition, appellee cites Maryland Rule 8–131(a), which provides that, except for jurisdictional issues, an appellate court will not ordinarily "decide any ... issue unless it plainly appears by the record to have been raised in *or* decided by the trial court ...." (emphasis added). Here, the issue of whether appellant waived his right to counsel by inaction *was decided below.* And, our holding, like the holding in *Moore,* is that "the trial court erred by finding a waiver of counsel by inaction ...." *Id.* at 180, 626 A.2d 968. Because the issue was decided, it does not matter under Rule 8–131(a) whether the *pro se* contemnor raised the issue.

### *OTHER MATTERS*

Appellant also contends that the trial court, prior to deciding whether to sentence him, erred in forcing him to pay $1,000 toward his child-support arrearage. At the time the court forced appellant to pay $1,000, appellant owed more than $4,000 in back child support—even if he were credited with the sum sent to OCSE by the IRS. Appellant now asks us to order that the $1,000 be returned to him. Because the money was owed and because it has already been paid, the issue of whether the court should have forced appellant to pay the money is moot. *See Chase v. Chase,* 287 Md. 472, 473, 413 A.2d 208 (1980).

Appellant raises several other issues that we need not resolve in light of our holding that appellant is entitled to a new trial.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL; COSTS TO BE PAID BY APPELLEE.**